McCAULL-DINSMORE CO. v. CHICAGO, M. & ST. P. RY. CO.

(District Court, D. Minnesota, Fourth Division. August 23, 1918.)

1. CARRIERS ⚙135—LIABILITY—INTERSTATE COMMERCE ACT.

Under the Cummins amendment of March 4, 1915, to the Interstate Commerce Act, which declared that carriers should be liable for the full actual loss, a common carrier, where wheat was lost in transit is liable for the value of the grain at the point of destination, notwithstanding the shipment was made under a contract known as a "uniform bill of lading," which was part of the public tariffs filed with the Interstate Commerce Commission, and which provided that the loss should be computed on the value of the property at the time and place of shipment.

2. CARRIERS ⚙135—FAILURE TO DELIVER GOODS—DAMAGES.

In case of nondelivery, the carrier's common-law liability is the value of the goods at the point of destination at the time they should have been delivered.

At Law. Action by the McCaull-Dinsmore Company against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for plaintiff.

Cobb, Wheelwright & Dille, of Minneapolis, Minn., for plaintiff.
F. W. Root, of Minneapolis, Minn., for defendant.

MORRIS, District Judge. I hereby find the following facts established by the agreed written statement of facts and by the admissions of the parties:

### Findings of Fact.

(1) That the plaintiff was and is a corporation, duly created, organized, and existing under the laws of the state of Minnesota, and a citizen of said state, having its principal place of business in the city of Minneapolis, county of Hennepin, state of Minnesota, and is a resident and inhabitant of said Fourth division.

(2) That the defendant was and is a railway corporation of the state of Wisconsin and a citizen thereof, and was and is a common carrier of freight and passengers for hire in and between the states of Wisconsin, Minnesota, South Dakota, North Dakota, Montana, Iowa, and Nebraska.

(3) That at Three Forks, Mont., a station on the line of defendant, on the 17th day of November, 1915, there was delivered to the defendant, in Canadian Pacific car No. 210470, by the Three Valley Co-operative Association, 87,840 pounds, or 1,464 bushels, of No. 2 hard Montana wheat, consigned and for transportation to the McCaull-Dinsmore Company, for account of the McCaull-Dinsmore Company, Omaha, Neb., and that said wheat was the property of the plaintiff.

(4) That at the time of such delivery of said wheat to the defendant there was entered into between the consignor thereof and the defendant a certain contract for the purpose of such receipt, transportation, and delivery, which said contract is commonly known and referred to as a "uniform bill of lading."

(5) That said contract was a part of the published tariffs, legally published and filed with the Interstate Commerce Commission. That said tariffs provided, among other things, a rate of transportation based on and controlled by said bill of lading or contract; and said tariff further provided that,

⚙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in cases where the shipper was not agreeable to shipping under the terms of said contract or bill of lading, then a higher rate of transportation was provided by said tariffs.

(6) That said contract or bill of lading provided, among other things, as follows: "The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of shipment under this bill of lading, including freight charges, if paid."

(7) That on or about the 5th day of December, 1915, said car and contents were wrecked in transit, and the said wheat became so mixed and commingled with other wheat of other persons as to cause its identity to be lost, and no part of said grain was ever transported to destination.

(8) That ten days was a reasonable time for the transportation of said car of grain from said Three Forks to said Omaha. That the value of said wheat at the place and time of shipment was 82 cents per bushel. That the fair market value of said wheat at destination, at the time when it should have been there delivered to the plaintiff, with interest, less lawful freight charges, is the sum of $1,422.11, of which the plaintiff received from the defendant, on March 8, 1916, the sum of $1,200.48.

(9) That after the rate was fixed by the Interstate Commerce Commission the freight charges received by the defendant on said shipment of grain were based upon the weight of the grain shipped without regard to value. That the defendant contends that, by virtue of said provision in said bill of lading, it is liable only for the value of said wheat at the place and time of shipment. That the plaintiff contends that the defendant is liable for the market value of the wheat at destination at the time when it should have been there delivered to the plaintiff, less lawful freight charges. That this is a suit and proceeding arising under the act of Congress of February 4, 1887 (24 Stat. 379, c. 104), and the several acts amendatory thereof, including the so-called "Cummins Amendment" of March 4, 1915 (Act March 4, 1915, c. 176, 38 Stat. 1196 [Comp. St. 1916, §§ 8592, 8604a]), and is a suit and proceeding arising under the Constitution and laws of the United States.

### Conclusion of Law.

As a conclusion of law the court finds that plaintiff is entitled to judgment against the defendant for the sum of $221.63, with interest thereon since the 27th day of November, A. D. 1915, together with its costs and disbursements. Let judgment be entered accordingly.

[1, 2] The sole question in this case is whether the loss to the shipper is to be measured by the value of the property at the place of destination at the time it should have been delivered, or by the value of the property at the time and place of shipment; and the decision of this question must depend upon whether or not the provision or stipulation in the bill of lading, issued by the carrier and accepted and agreed to by the shipper, that the loss should be measured by the value at the time and place of shipment and settled on that basis, was valid under the Cummins Amendment of March 4, 1915, to the Interstate Commerce Act, which was the law in force at the time of the shipment and of the loss. This amendment was passed after the decisions of the Supreme Court on the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [Comp. St. 1916, §§ 8604a, 8604aa]) cited by counsel had been rendered, and it is apparent from its language that its proposal and enactment were caused by these decisions, and that it was aimed directly at them. Viewed in the light of those decisions and of the purpose evidently sought to be

accomplished, it is difficult to see how its language could be more sweeping:

"Shall be liable  *  *  * for the full *actual loss*  *  *  * caused by it, *  *  * notwithstanding *any limitation* [the italics are mine] of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and *any such limitation*, without respect to the manner or form in which it is sought to be made, is hereby declared to be unlawful and void."

This is the language of the amendment so far as it touches this case. The first proviso indicates the cases, of which this is not one, and the only cases, exempt from that language, and the only way in such cases of avoiding its terms, and thus emphasizes and, if that were possible, makes more sweeping those terms. I do not see that it can make any difference under the language quoted that this bill of lading was provided for in the schedule of rates filed with the commission, and that that schedule of rates also provided another bill of lading under which, if issued and accepted, the rate would have been higher.

Under this language, is the provision or stipulation above referred to in the bill of lading unlawful and void? If it is an agreement as to value, which I think it is not, it is clearly so. The answer to the question must therefore be found in the answer to the further question: Was this a limitation of the liability of the carrier, or a limitation of the amount of recovery? And it seems to me the answer to this question is found in the answer to the further question: What would have been the liability of the carrier, and the consequent amount of recovery, if that provision or stipulation had not been in the bill of lading? In the latter case there can be no question, and it was so admitted on the argument, as it had to be, but that the liability and the consequent amount of the recovery would have been that of the common law, namely, the value of the goods at the point of destination at the time they should have been delivered; and that this is the actual loss to the shipper caused by the failure of the carrier to deliver the goods at that time and place, whether the value is greater or less than at the time and place of shipment, is the foundation of the common-law rule.

From the foregoing simple statement, I do not see how it is possible to escape the conclusion, upon a fair and open-minded consideration of the language of the amendment and the obvious and well-known meaning of its terms, that this provision or stipulation in the bill of lading is a limitation of the liability of the carrier and of the amount of recovery, and is therefore unlawful and void. In reaching this conclusion I have not failed to consider the very able argument of counsel for defendant, and also what has been said by the Interstate Commerce Commission, and it is with regret and not a little misgiving that I find myself in difference with men so able and experienced in such matters. But, consider the matter as I may, I am always irresistibly brought back to this simple statement and to the necessary conclusion therefrom.

I cannot see that there could be any greater difficulty, after loss has occurred, in ascertaining and proving the value at the time and place of delivery or destination than in ascertaining and proving the value at the time and place of shipment. If it be true, as suggested in the argument and by the commission, as I think it may be, that the conclusion which I have reached will result in difficulties and confusion in existing rules and regulations and schedules, and in some cases, under these rules and regulations and schedules, in hardship and injustice to the carriers, and possibly in some discrimination amongst shippers, the remedy will be found in facing the law, whose language, as it seems to me, is too plain for construction or evasion, squarely, and revising and reconstructing those rules and regulations to meet it.

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes