CHICAGO, M. & ST. P. RY. CO. v. McCAULL–DINSMORE CO.*

(Circuit Court of Appeals, Eighth Circuit.    September 22, 1919.)

No. 5314.

CARRIERS ⬥180(1)—LIMITATION OF LIABILITY; LIABILITY FOR LOSS OF INTER-
STATE CARRIERS.

Under Interstate Commerce Act, § 20, as amended by Cummins Act, §
1 (Comp. St. § 8604a), providing that an interstate carrier of property
shall issue a bill of lading therefor and be liable for any loss or damage
to the property caused by it or any other carrier when carried under a
through bill of lading, and that no contract limiting such liability shall
be valid, a provision of such bill of lading fixing the carrier's liability
at the value of the property at the place and time of shipment is a limi-
tation, and is invalid, and not enforceable.

In Error to the District Court of the United States for the District
of Minnesota; Page Morris, Judge.

Action at law by the McCaull-Dinsmore Company against the
Chicago, Milwaukee & St. Paul Railway Company. Judgment for
plaintiff (252 Fed. 664), and defendant brings error.    Affirmed.

F. W. Root, of Minneapolis, Minn. (Nelson J. Wilcox, of Chicago,
Ill., on the brief), for plaintiff in error.

J. O. P. Wheelwright, of Minneapolis, Minn., for defendant in error.

Before HOOK and STONE, Circuit Judges, and AMIDON, Dis-
trict Judge.

STONE, Circuit Judge.    Action for loss of interstate shipment of
grain.    The facts were stipulated.    The shipment was made under a
bill of lading or shipping contract wherein it was provided that:

"The amount of any loss or damage for which any carrier is liable shall
be computed on the basis of the value of the property at the place and time
of shipment under this bill of lading, including freight charges, if paid."

The contract was in a form like that included in the legally pub-
lished tariffs filed with the Interstate Commerce Commission, which
tariffs provided, among other things, a rate of transportation based
on and controlled by said form of bill of lading, and that, in cases
where the shipper was not agreeable to shipping under the terms of
such form, then a higher rate was to be charged.    The fair market
value of the shipment at destination at the time when it should have
been delivered, with interest, and less freight charges, was $1,422.11.
The railway has paid thereon $1,200.48, the value at origin at time
of shipment.    From a judgment for the difference the railway has
taken its writ of error.

The controversy is over the difference, and the sole question here
presented is whether the origin value or the destination value should
govern where the shipment was under such a form of interstate bill
of lading.    At the time of this shipment the so-called Cummins Amend-
ment of March 4, 1915 (38 Stat. 1196, c. 176 [Comp. St. § 8604a]),

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari granted 251 U. S. 549, 40 Sup. Ct. 219, 64 L. Ed. 409.

contained the law in this respect governing form of contracts for in-
terstate shipment.  That statute provided:

"That any common carrier, railroad, or transportation company subject
to the provisions of this act receiving property for transportation from a
point in one state or territory or the District of Columbia to a point in an-
other state, territory, District of Columbia, or from any point in the United
States to a point in an adjacent foreign country shall issue a receipt or bill
of lading therefor, and shall be liable to the lawful holder thereof for any
loss, damage, or injury to such property caused by it or by any common car-
rier, railroad, or transportation company to which such property may be de-
livered or over whose line or lines such property may pass within the United
States or within an adjacent foreign country when transported on a through
bill of lading, and no contract, receipt, rule, regulation, or other limitation
of any character whatsoever, shall exempt such common carrier, railroad, or
transportation company from the liability hereby imposed; and any such
common carrier, railroad, or transportation company so receiving property for
transportation from a point in one state, territory, or the District of Columbia
to a point in another state or territory, or from a point in a state or terri-
tory to a point in the District of Columbia, or from any point in the United
States to a point in an adjacent foreign country, or for transportation wholly
within a territory shall be liable to the lawful holder of said receipt or bill
of lading or to any party entitled to recover thereon, whether such receipt or
bill of lading has been issued or not, for the full actual loss, damage, or in-
jury to such property caused by it or by any such common carrier, rail-
road, or transportation company to which such property may be delivered or
over whose line or lines such property may pass within the United States or
within an adjacent foreign country when transported on a through bill of
lading, notwithstanding any limitation of liability or limitation of the amount
of recovery or representation or agreement as to value in any such receipt or
bill of lading, or in any contract, rule, regulation, or in any tariff filed with
the Interstate Commerce Commission; and any such limitation, without re-
spect to the manner or form in which it is sought to be made is hereby de-
clared to be unlawful and void: Provided, however, that if the goods are
hidden from view by wrapping, boxing, or other means, and the carrier is
not notified as to the character of the goods, the carrier may require the
shipper to specifically state in writing the value of the goods, and the carrier
shall not be liable beyond the amount so specifically stated, in which case
the Interstate Commerce Commission may establish and maintain rates for
transportation, dependent upon the value of the property shipped as specifi-
cally stated in writing by the shipper.  Such rates shall be published as are
other rate schedules: Provided further, that nothing in this section shall de-
prive any holder of such receipt or bill of lading of any remedy or right of
action which he has under the existing law."

The railway seeks to avoid the application of this provision by con-
tending that it, in the present instance, has not sought to limit its
liability, but has, on the contrary, defined liability for the full, actual
loss, and has by its tariffs thus crystallized the method of arriving
at the actual loss.  We deem such contention unsound.  There was
no uncertainty as to the time or place of estimating value under the
rule of common law—it was the destination.  The evident purpose of
the provision in the bill of lading was not to introduce certainty, but
to avoid the rule existing at law, for the obvious object of escaping
a higher valuation which would often arise at destination.  Such a
provision is unquestionably a limitation, since it forbids application
of the established rule.

The railway also says:

"The rule, as we contend, was that, *in the absence of contract*, destination
value would apply, but that it was not unlawful to *agree upon origin value*."

Whether the parties could so agree at the common law is not material. The Cummins Amendment was not concerned alone with preventing contracts already illegal under the common law, but with prohibiting all agreements having the effect defined by that statute. Congress passed this act to remedy the defects in the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [Comp. St. §§ 8604a, 8604aa]), as developed in the case of Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, and intended thereby to fully and finally prevent all limitations of this character. Congressional Record, 63d Congress, 3d Session, Vol. 52, pp. 5446-5451.

The judgment is affirmed.