## COULTER v. GULF, C. & S. F. RY. CO. *
(No. 11303.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 5, 1925. Rehearing Denied May 22, 1926.)

**1. Carriers ⚖➾79.**

If carrier was not informed of any reason why shipment should reach destination within specified time, nor requested to use shortest route, shipment over longer and cheaper route did not constitute conversion.

**2. Appeal and error ⚖➾1002.**

Jury's finding of fact on conflicting evidence is conclusive on appeal.

**3. Appeal and error ⚖➾1005(1).**

Jury's finding and trial court's judgment on issue of special damages depending on notice to carrier cannot be disturbed on appeal.

**4. Carriers ⚖➾135—Shipper's damages from carrier's delay and damages to goods is difference in value thereof at destination and reasonable market value in condition they were when delivered or tendered to shipper.**

Shipper's damages from carrier's delay in delivering goods and damages thereto is difference in value of goods at destination, at time they reached destination, or at time of tender

to shipper, if shipped with reasonable care and dispatch, and reasonable market value thereof in condition they were in at time of such delivery or tender.

### 5. Appeal and error ⊚~179(3).

Shipper's failure to seek to have issue as to his damages, because of delay and damage to goods in transit, submitted to jury, makes it impossible for appellate court to determine loss sustained by him.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by H. W. Coulter against the Gulf, Colorado & Santa Fé Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Sam J. Hunter, of Fort Worth, for appellant.

Lee, Lomax & Wren, of Fort Worth, for appellee.

BUCK, J. This is the third appeal of this case, the decision of the first appeal being found in 139 S. W. 16, rendered by the Texarkana Court of Civil Appeals, the decision in the second appeal being found in 248 S. W. 788, rendered by this court, to which cases reference will be made for a fuller statement of the case than is necessary here.

On March 20, 1908, H. W. Coulter filed suit against the Gulf, Colorado & Santa Fé Railway Company for alleged damages to a shipment of billiard room furnishings, shipped from Fort Worth to Philadelphia. In his trial petition he alleged: That, before the shipment, the railway company's agents at Fort Worth had agreed with him to route the shipment by way of St. Louis, and over the Vandalia Railway line to Indianapolis, and that he should have the right to stop the shipment at Indianapolis, or to divert it to Detroit, Mich. That he had made a trade with one Grant H. Eby to sell him the furniture for $7,000, $3,000 to be paid in cash and the balance in notes. That he told the agents of the railway company at Fort Worth of this trade that he had made with Eby, and that they had notice of such trade. He alleged that instead of shipping the goods by way of St. Louis and Indianapolis, they shipped them to Chicago, over the lines of the Santa Fé system, and over the Nickel Plate Railway Company from Chicago to Buffalo, and over the Lehigh Railway Company from Buffalo, over and across the Blue Ridge Mountains, to the Philadelphia & Reading Railway Company, which delivered the same in its yards in the city of Philadelphia. That he was compelled by plaintiff to accept said shipment, without seeing it, and to pay a freight bill of $549.69. That said shipment was in transit for nearly two months. He further alleged that when he opened the two

cars in which the goods were shipped, he found the goods greatly damaged, and that after nearly a year's effort of himself and his attorney at Philadelphia, he sold them for $1,200, the best bid that he could get. That Eby looked at the goods at Philadelphia, and first declined to negotiate any further with reference to the trade, but finally agreed that if the plaintiff would have the goods put in as good condition as they were at the time of leaving Fort Worth, and pay the freight thereon to Detroit, Mich., he would accept them at the agreed price, provided he would deliver them at Detroit within 30 days. He alleged that the manufacturers of the goods, Brunswick-Balke-Collender Company, consulted with by plaintiff, stated that they could not repair them within less than six months, and that consequently he was forced to lose the benefit of the contract of sale theretofore made with Eby.

In one count he sued for conversion, and in a second count he sued for damages by reason of the loss of the benefits of the trade claimed to have been made with Eby.

The defendant answered by way of a number of exceptions, a general denial, and specially pleaded that the railway company had no notice of any trade made by the plaintiff with Eby, and that although the railway company agreed with the plaintiff that if it was notified in time to divert the shipment from the defendant's line to·St. Louis and then to Indianapolis, etc., it would do so, yet in fact plaintiff never notified the railway company of his desire to have such diversion made.

The trial was had before a jury, on special issues, which, with their answers, are as follows:

"(1) Was plaintiff, Coulter, the owner of the goods in question at the time he delivered them to defendant, Gulf, Colorado & Santa Fé Railway Company at Fort Worth, Tex., on May 2, 1907? Ans. Yes.

"(2) Were they in good order and condition at the time of delivery to defendant? Ans. Yes.

"(3) Did the defendant's freight agent, Dunham, deliver to plaintiff a written report or bill of lading for said goods? Ans. Yes.

"(4) Did or not plaintiff notify the defendant's agents, Graham and Dunham, or either of them, before or at the time he delivered the goods to defendant, that he had conditionally sold the goods to Grant H. Eby? Ans. No.

"(5) Find from the evidence whether or not the plaintiff showed Graham and Dunham, or either of them, the Eby letters read to you in evidence. Ans. No.

"(6) Find from the evidence whether or not the plaintiff requested Dunham to route and waybill the shipment by way of St. Louis over the Vandalia line of railway to Indianapolis, Ind. Ans. No.

"(7) Find from the evidence whether or not Eby had agreed in his letters to buy the goods for $7,000 conditioned upon Coulter's deliver-

ing them in good order and condition at Indianapolis or Detroit, and pay Coulter $3,000 cash and execute his notes for the balance payable monthly for $75 a month. Ans. Yes.

"(8) Find from the evidence whether or not, at the time Coulter delivered said goods to defendant for shipment, he had in his mind decided to accept said price and deliver said goods to Eby at Indianapolis or Detroit as Eby might request, if, when the parties met in St. Louis a few days later as requested by Eby in his letters, the details of the contract and payments should be settled satisfactorily to both parties. Ans. No.

"(9) Did the plaintiff and Eby afterwards, early in the month of May, 1907, meet in St. Louis and settle the details satisfactorily to each other? Ans. No.

"(10) Did they agree that Eby should pay $3,000 in cash to Coulter for the goods if delivered in Indianapolis or Detroit in good order and condition, and execute his notes payable monthly with interest from date thereof at or about 8 per cent. per annum, and secure said notes by chattel mortgage on the entire shipment of goods? Ans. Yes.

"(11) If you have answered special issues Nos. 7, 8, 9, and 10 affirmatively, then find from the evidence what in your judgment would have been the reasonable cash value of plaintiff's contract of sale of said shipment of goods to Coulter, if it had been closed up in writing and secured as agreed by the parties and duly recorded including the cash payment. Ans. Seven thousand dollars.

"(12) Find from the evidence whether or not the defendant's agent, Dunham, waybilled the shipment from Fort Worth to St. Louis, Mo., and thence over the Vandalia line of railroad to Indianapolis. Ans. No.

"(13) Find whether or not the defendant's agent agreed that plaintiff should have the right and privilege to stop the shipment at Indianapolis and divert it to Detroit in case Eby requested it. Ans. Yes.

"(14) Was it the policy of the defendant company to route and waybill shipments over the Atchison, Topeka & Sante Fé Railroad when the point of destination could be reached by diverting it over said road? Ans. Yes.

"(15) Did Dunham waybill this shipment over the Atchison, Topeka & Santa Fé in accordance with that policy, in order and for the purpose of throwing to defendant and said company a greater proportion of the freight rates from Fort Worth to Philadelphia? Ans. Yes.

"(16) Find from the evidence which was the shortest, cheapest, and best route to waybill said shipment to Indianapolis, the way defendant waybilled them or the way Eby requested, if he did request, them waybilled, in his letter of April 24, 1907. Ans. The way Eby requested was shortest, but the rates were the same.

"(17) Find from the evidence which was the shortest, cheapest, and best route to waybill said shipment to Philadelphia, the way defendant waybilled them or the route from Fort Worth to Oklahoma City, hence to St. Louis over the Vandalia line to Philadelphia. Ans. The way defendant waybilled the goods was the cheapest, but not the shortest and best, route.

"(18) Find from the evidence what sum of money did Coulter pay to Philapdelphia & Reading Railway Company as freight and drayage for the transportation of said goods from

286 S.W.—36

Fort Worth to Philadelphia. Ans. Five hundred forty-six dollars and sixty-nine cents.

"(19) Find from the evidence what the defendant's agents told Coulter what freight charge would be to Indianapolis, if they told him what they would be. Ans. No definite charge quoted.

"(20) What was the entire shipment of goods worth to Coulter, as secondhand billiard goods, in Philadelphia, in the condition they were in when delivered to Coulter? Ans. No stated value.

"(21) What were they worth to Coulter in the same city on the day they were sold to Brunswick-Balke-Collender Company, November 27, 1908? Ans. Twelve hundred dollars.

"(22) Was the price obtained from Brunswick-Balke-Collender Company [as good a price as could in that city at that time] as good a price as could be obtained for them by reasonable efforts to sell them for cash in the condition they were in when they were sold to Brunswick-Balke-Collender Company? Ans. Yes.

"(23) Find from the evidence whether there was in Philadelphia any current market value for such goods in the condition they were in when they were delivered to Coulter, or when they were sold. Ans. No.

"(24) Find from the evidence whether or not Mr. Coulter and his Philadelphia attorney, Mr. Saul, made reasonable efforts to find a purchaser for said goods. Ans. Yes.

"(25) Find from the evidence whether plaintiff and his lawyer in Philadelphia got the best price for them, in the condition they were in, that could be obtained by reasonable efforts and ordinary diligence. Ans. Yes.

"(26) What was the reasonable market value of said shipment of goods at Fort Worth when delivered to the defendant, and when the defendant's agent, Dunham, waybilled them via Chicago over the Atchison, Topeka & Santa Fé Railway, and over the Nickel Plate to Buffalo, N. Y., and over the Lehigh Valley Railroad through Pennsylvania into Philadelphia? Ans. No stated value.

"(27) What were they reasonably worth to plaintiff at Forth Worth, Tex., on May 2, 1907? Ans. No determined value.

"(28) What were they reasonably worth to Coulter crated at Indianapolis or Detroit, Mich., in May, 1907, in the condition they were in when delivered to defendant? Ans. Seven thousand dollars less the freight.

"(29) What was their reasonable market value in Indianapolis, Ind., and in Detroit, Mich., during the month of May, 1907? Ans. No stated value.

"(30) What would they have been reasonably worth to Coulter in Indianapolis or Detroit, Mich., in May, 1907, in as good order and condition as they were on May 2, 1907, at Fort Worth, Tex.? Ans. Seven thousand dollars, less the freight.

"(31) The undisputed testimony in this case shows that the plaintiff's goods were crated at Fort Worth by plaintiff's agent. Now, you will answer the following questions:

"(a) In the crating of the goods were there openings in the sides of the crates where the tables or other furniture might be scratched or marred from outside? Ans. Yes.

"(b) Did the leaving of such openings as you have found were left in the crates expose the

tables and other furniture to be scarred or gouged from the outside by reason of such improper crating of said goods? Ans. Yes.

"(c) Did any damage result to plaintiff's billiard tables and other furniture by reason of the openings being left in the crates, if you have found they were left under question (a)? Ans. Yes.

"(d) If you answer question (c) 'yes,' then describe and state the extent of such damage. Ans. Three hundred dollars.

"(e) If in answer to the next preceding question you have found the plaintiff's goods were injured and the extent of the injury, you will state whether or not the plaintiff's goods sustained any other injury in the shipment other than the injury, the result of such improper crating as aforesaid. Ans. Yes.

"(f) If you have answered question (e) 'yes,' then you will state the nature and extent of such additional damage, describing it as definitely as you can in the space below. Ans. Light globes, cash register, and electric fans, etc., damaged extent unknown.

"(32) Did the bid of the witness John Huston, testified to by him, to put the shipment in question in as good condition as when it left Fort Worth for $300 cover, and was it sufficient to cover, the damage to the pool and billiard tables, chairs and racks, and other goods shipped and the putting of said goods in the same condition as before shipment? Ans. No.

"(33) If you have answered special issues Nos. 9 and 10 in the affirmative, then you will answer whether Eby thereafter declined to carry out said contract. Ans. Yes.

"(34) If you have answered the preceding question 'yes,' what reason, if any, was given by Eby as to why he would not carry out the contract? Ans. Account of condition goods.

"(35) If you have answered the above and last question stating any reason claimed by Eby as to why he would not carry out the contract, you will find from the evidence and answer whether or not such, in fact, was Eby's reason for not carrying out the contract. Ans. Yes."

Both plaintiff and defendant moved the court for judgment upon this verdict, and the court granted defendant's motion for judgment, and the plaintiff has appealed.

Neither party complained in the court below, nor complains here, of the issues submitted, or of the answers of the jury thereto; but it is the contention of appellant that the court erred in overruling his motion for judgment, and in granting the motion of the defendant below.

According to his pleadings, plaintiff presented three theories upon which he was entitled to recover: (1) That by not shipping the goods according to direction and shipping them by a long, circuitous, and mountainous route, defendant in effect converted the goods to its own use, and was liable for the value of the goods. (2) That inasmuch as he had notified defendant's agents of his contract of sale with Eby, covering the goods in the shipment, and his desire to have the goods routed by way of St. Louis and Indianapolis, and possibly to Detroit, Mich., and by reason of the failure of the railway company to so route

them, he lost the benefits of said contract of sale, and the railway company was liable therefor. (3) The plaintiff presented in his pleadings a claim for damages to the goods in question, by reason of the long delay in the shipment, the rough handling, etc.

[1, 2] By the answer to special issue No. 6, hereinabove, the jury found that the plaintiff did not request Dunham, the defendant's agent at Fort Worth, to route and waybill the shipment by way of St. Louis over the Vandalia line of railway to Indianapolis, and by answer to issue No. 12 the jury found that said Dunham did not waybill the shipment from Fort Worth to St. Louis and over the Vandalia line to Indianapolis. If the railway company was not informed of any reason why the shipment should reach Philadelphia within a given time, and was not requested to divert the shipment by way of St. Louis to Indianapolis, we see no reason why the shipment to Chicago, over the Santa Fé system, and thence over other lines to Philadelphia, was not permissible, and we see no reason why such routing should constitute a conversion. In answer to issue No. 16, the jury found that the way Eby requested the shipment was the shortest, but the rates were the same, and in answer to issue No. 17 the jury found that the way defendant waybilled the goods was the cheapest, but not the shortest and best route. The evidence showed that Eby had written to plaintiff suggesting the shipment by way of St. Louis, and Indianapolis, with the right to divert to Detroit, and plaintiff testified that he showed the agents of defendant at Fort Worth these letters and told them that he wanted the shipment thus routed. Both agents testified in person and denied ever having seen the letters or ever having been informed that Eby requested such routing, or that they had ever been informed by plaintiff that he wanted the diversion by way of St. Louis and Indianapolis. This being a question of fact upon contradictory evidence, the finding of the jury is decisive.

[3] Since the jury found that the agents of defendant were not notified of any existing contract of sale between plaintiff and Eby of the goods in question, and this being a matter of special damages depending upon notice, the finding of the jury and the judgment of the court upon that count in the petition cannot be disturbed.

[4] Nor do we think that we can disturb the judgment below on the third ground for recovery as set out in the petition. If plaintiff should be entitled to recover for the damage to the shipment, the amount of such recovery would be the difference in the value of the goods at destination, at the time the shipment reached its destination, or at the time of the tender of the goods to the shipper, if shipped with reasonable care and dispatch, and the reasonable market value of such goods in the condition they were at the time of such delivery or tender to the shipper or

his order. H. & T. C. Ry. Co. v. Jackson, 62 Tex. 209; 4 R. C. L. p. 920, § 386; 6 Cyc. p. 525, § 4.

There is no testimony in the record as to what was the difference in the reasonable market value of the goods, and there is no finding of the jury as to such value. In answer to issue No. 20, the jury found that no stated value was shown of the entire shipment of goods, as secondhand billiard goods in Philadelphia, in the condition they were in when delivered to Coulter; and in answer to issue No. 21 the jury found that they were worth $1,200 to Coulter in said city on the day they were sold to Brunswick-Balke-Collender Company. The jury further found, in answer to issue No. 22, that the price obtained from said company was as good a price as could have been obtained at that time and in that place, by reason of efforts to sell for cash in the condition they were in when sold. The jury further found that there was no current market value for such goods in the condition they were in when they were delivered to Coulter or when they were sold. In answer to issue No. 26 the jury found that there was "no stated value" shown in the testimony, of. the goods at Fort Worth when delivered to the defendant railway company. And in answer to issue No. 27 the jury found that there was no "determined" value of the goods at Fort Worth on May 2, 1907, the date of shipment.

[5] We do not find any issue submitted which would have elicited the answer necessary to be determined in order to support a verdict for the plaintiff on this ground for recovery. It devolved on plaintiff below to seek to have submitted such issue if there was any evidence to support it, and his failure so to do renders it impossible for this court to determine what loss, if any, he sustained. Abilene v. McMahan (Tex. Civ. App.) 271 S. W. 188; G., H. & S. A. Ry. Co. v. Price (Tex. Com. App.) 240 S. W. 524; Texas City Transp. Co. v. Winters (Tex. Com. App.) 222 S. W. 541; Chesnut v. Specht (Tex. Civ. App.) 272 S. W. 830. The evidence below, from the witness James Huston, who was engaged in "hardwood working and hardwood finishing —in the furniture business," was that for $300 he would repair and revarnish the billiard tables and other pieces of furniture and place them in as good a condition as they were prior to any injury from shipment. He testified that he noticed a part of one crate off; that is, the plank nailed across the back. of a crate of tables was lost or off. That none of the other crates were injured, or strained, or damaged in any way that he saw. He further testified that the injury to the shipment apparently was caused by improper crating. The testimony otherwise shows that the crating was done by men employed by plaintiff, and no effort is made to distinguish between any injuries caused by improper shipment and injuries caused by improper crating.

Therefore, we conclude that we cannot disturb the judgment in any respect, and all assignments are overruled, and the judgment is affirmed.

### Appellant's Motion for Rehearing.

Our attention has been called to the following statement made in our original opinion, to wit:

"And specially pleaded that the railway company had no notice of any trade made by the plaintiff with Eby, and that; although the railway company agreed with the plaintiff that if it was notified in time to divert the shipment from defendant's line to St. Louis and then to Indianapolis, etc., it would do so, yet in fact plaintiff never notified the railway company of his desire to have such diversion made."

We have again carefully read the somewhat lengthy pleadings of defendant, and do not find the above pleading therein. The writer supposes that he gathered from the oral argument that such contention was made by the railway company, and inadvertently stated that it was so pleaded. But we do not think that such plea was essential to sustain the judgment for the defendant below, or here. The plea of general denial put in issue every fact alleged by plaintiff, except such as was admitted. In the printed report the above statement will not appear, nor will any reference thereto be made on the motion for rehearing.

Appellant has filed an able and lengthy motion, and also a written argument on the motion, and we have carefully read and considered the same. Complaint is made that the trial court and this court evaded the consideration of the federal questions and issues involved in this appeal, and that this court has denied the appellant due process of law and the equal protection of the law, as guaranteed to him under the Fourteenth Amendment to the United States Constitution. We have earnestly and carefully considered said motion. We do not believe that we can improve the reasoning given in our original opinion to support our conclusion that the judgment should be affirmed. We do not see that this case, as here disposed of, involves any federal question, or any question arising by virtue of the Carmack Amendment.

Hence the motion for rehearing is overruled.