### TEXAS MEXICAN RY. CO. v. SLAUGHTER.

No. 4815.

Court of Civil Appeals of Texas. El Paso.

June 13, 1951.

Lloyd & Lloyd, Alice, Elmore H. Borchers, Laredo, for appellant.

Butler & Williams, Robstown, for appellee.

McGILL, Justice.

The nature and result of this suit as stated by appellant is conceded to be correct for the purpose of this appeal, by appellee, and we adopt it in part. On March 14, 1950, appellee David M. Slaughter, d/b/a David M. Slaughter Company, filed suit against appellant, The Texas Mexican Railway Company, seeking to recover alleged damages to shipments of one car of tomatoes and three cars of onions. The petition contained four counts, but the case was tried on count I (alleging improper carrying and delay in the shipment of 780 lugs of tomatoes from South Laredo, Texas, to Pittsburgh, Pa., and then diverted by appellee to New York City.) Counts II, III and IV were severed and docketed as a separate suit.

Judgment was rendered on October 23, 1950, for the appellee for $1,965.98, plus interest from December 17, 1947, in the amount of $334.22, a total of $2,300.20, and costs.

Trial was to the court without a jury. At the request of appellant the court filed findings of fact and allowed additional findings of fact. The findings are elaborate. We shall hereafter refer to those deemed material to a proper disposition of this appeal.

Appellant has presented four points. We shall consider them in the order presented. The first point is that the court erred in rendering judgment for appellee by adding the salvage value for which the tomatoes were sold to the full value thereof found by the court.

In disposing of this point we assume for the moment that the court's finding (XI) that had the car in question been properly transported and carried and promptly delivered on the 15th day of December, 1947, the tomatoes would have been of the reasonable fair cash market value of $2,230.00 is supported by the evidence. We also assume that the acceptance of delivery of the car was refused by the consignee and that the destination railroad sold the tomatoes at a salvage price of $239.15 net (additional finding 7); also that this salvage value was retained by the carrier. This assumption is based on the account of sales which was made to the destination carrier. With these assumptions the court did not err in fixing the amount of damages sustained by the plaintiff at $1,965.98. Certainly the carrier could not retain the amount realized by it as the salvage value of the tomatoes and also collect its full amount of freight charges. In Thompson v. Tankersley, Tex.Civ.App., 238 S.W.2d 263, it does not

appear whether the $83.25 which was the amount realized as salvage by the operations of the delivering carrier was retained by the carrier or remitted by it to the shipper or consignee. If it was remitted to the consignee or shipper this sum should have been deducted from the market value fixed by the jury. If it was retained by the carrier it should have been deducted from the amount of freight charges and the balance thereof only deducted from the market value found by the jury. We think this item was inadvertently overlooked by the San Antonio Court of Civil Appeals in its holding that in that case the measure of plaintiff's recovery was the reasonable cash market value of the car of tomatoes at the time of their arrival in Baltimore, had they arrived there without material damage (found by the jury to be $2,960) less the appellant's offset for freight charges ($383.-25) and that the trial court's judgment for $2,576.75 was for the correct amount. We think that court did not intend to abrogate the rule enunciated by it in Texas Mexican Railway Company v. Slaughter, Tex.Civ. App., 122 S.W.2d 1101, and followed by this court in Texas & N. O. Ry. v. Searcy, Tex.Civ.App., 220 S.W.2d 366 (w.r.n.r.e.). That rule is, loc. cit. 122 S.W.2d 1103 (3): "Where perishable goods arrive at destination in a damaged condition and it is shown that there is no market value for such commodities on the first day they are available for the market and that they are thereafter salvaged and sold as soon as possible, for the best price obtainable in order to minimize damages, the measure of the shipper's damage is the *difference between what the market value of the commodities would have been on the date they arrived at destination if they had not been damaged, and the price for which the goods are sold.* (Emphasis ours.) Of course the salvage value should not be added to the market value, but should be deducted therefrom. However, where the carrier retains the amount realized for salvage, this sum should be applied to its freight charges, and if less than the amount of such charges it should be deducted therefrom and the balance of such charges

only in turn deducted from the market value. This in effect is what the court did in this case in arriving at the figure of $1,965.98 as the damage sustained by plaintiff. We overrule this point.

■ The second point is that there was no evidence upon which the court could have found the market value of the tomatoes shipped was $2,230 had they been properly transported and carried and promptly delivered on the 15th day of December 1947; and the third point is that there is no evidence of the market value of the tomatoes had they been so transported and delivered on December 17, 1947, the date when they were actually delivered and sold. The finding that the market value on December 15, 1947 (XI) was $2,230 is based solely on the United States Department of Agriculture market report for Texas tomatoes of that date (Additional finding 13). The relevant quotation from this market report is: "Tex. ripe, some wasty, 6 x 6 3.50, 6 x 7 2.25–3.25, 7 x 7 2.25." The court found (additional finding 14) that the shipment contained 114 (lugs) 6 x 6 and 666 (lugs) 6 x 7 of No. 2 grade tomatoes and that there are three grades of tomatoes; U. S. No. 1 tomatoes received the highest market price of the three grades, U. S. No. 2 received the lowest price of the three grades. Each grade brings a different price. (Additional finding 12.)

The market quotation does not purport to refer to any grade unless the words "Texas ripe, some wasty", refer to grade, since the figures 6 x 6, 6 x 7 and 7 x 7 refer to size only. The market quotations when applied to the 114 lugs size 6 x 6 and 666 lugs size 6 x 7 which the court found were contained in the shipment cannot be so applied as to equal the exact market value found by the court. To illustrate:

| | |
|---|---|
| 114 (6x6) at 3.50 equals | $399.00 |
| 666 (6x7) at 3.25 " | 2164.50 |
| Total | $2563.50 |
| 666 lugs (6x7) at 2.25 | 1498.50 |
| (add 114 at 3.50) | 399.00 |
| Total | $1897.50 |

or, taking the average of the quotations of the sizes found by the court to have constituted the shipment of 666 6 x 7 (2.25–3.25, or 2.75) multiplied by the number of lugs of size 6 x 7 contained in the shipment, equals $1,897.50, add $399, total $2,296.50. This is the nearest to the figure found by the trial court that we have been able to find by application of any combination of the market quotations to the number of lugs according to size of tomatoes contained in the shipment as found by the court. An application of the average of the quotations based on size to the sizes found by the court to have been in the shipment leads to a like result, i. e., 6 x 6 at $3.50, 6 x 7 at 2.25–3.25, or an average quotation of 2.5833+ per lug, multiplied by 780, the number of lugs, equals $1,814.97, or applying to the average of all quotations including the 7 x 7 size at 2.25 (this size was not included in the shipment according to the court's finding, additional 7), a like result is also reached; 6 x 6 at 3.50, 6 x 7 at 2.25–3.25, 7 x 7 at 2.25, or an average of all quotations of 2.8125 per lug, multiplied by 780, the number of lugs, equals $2,183.75. We think the assumption that the words "Tex. ripe, some wasty" appearing in the quotation classified all Texas tomatoes quoted as U. S. Grade No. 2 is unwarranted since grade depends on other elements than ripeness or waste. In the Blue Book, 47th Edition, 1951, published by the Produce Reporter Co., Wheaton, Ill. at page 1087, U. S. Grade No. 2 tomatoes is thus defined: "U. S. No. 2 shall consist of tomatoes of similar varietal characteristics which are mature but not overripe or soft; not badly misshapen, free from decay, unhealed cuts, freezing injury, and from serious damage caused by dirt, bruises, sunscald, sunburn, puffiness, cut faces, growth cracks, scars, disease, insects, hail or mechanical or other means." It is quite clear from this definition that the words "Tex. ripe, some wasty" contained in the market quotation cannot be taken as referring to U. S. Grade No. 2 tomatoes. Therefore, since the market quotations which are the sole basis for the court's finding of market value do not refer to Grade No. 2 tomatoes, and for the further reason that the quotations cannot be applied to the number of lugs of a specified size of tomatoes as found by the court, such size being the basis of the quotations so as to arrive at the market value found by the court, we hold that the court's finding of market value on December 15, 1947, is without support in the evidence, in view of the other findings above referred to. The latter reason would not be controlling if the market quotations could be held to apply to U. S. Grade No. 2 tomatoes, since appellee is not complaining that the judg- is for too small a sum, but we mention this additional reason in connection with the first reason, which we think controlling. The court did not find a market value of the tomatoes on December 17, 1947, the date they were available for marketing. He did find that the tomatoes had no market value on that date in the condition in which they arrived (No. XII) and that the net salvage value on that date was $239.14 (finding No. XIII). This salvage value is of course no evidence of the market value on that date had the tomatoes arrived without delay and rough handling on the part of the carrier. Thompson v. A. J. Tebbe & Sons Co., Tex.Civ.App., 241 S.W.2d 627; and Thompson v. A. J. Tebbe & Sons Co., Tex.Civ.App., 241 S.W.2d 633.

Since the court's finding of the market value on December 15, 1947, is not supported by the evidence, the judgment must be reversed and the cause remanded for another trial.

Appellant's fourth point is in substance that the court's finding that at the time of delivery of the tomatoes by plaintiff to defendant at Laredo, Texas, they were in good, sound and marketable condition is not supported by the evidence and that therefore at least part of the damage was due to the condition of the tomatoes when loaded. In view of another trial we refrain from discussing this point. We have carefully considered it, and think it is without merit, and overrule it.

The judgment is reversed and the cause remanded.