as to the facts surrounding the commission of the offense.

The contention of appellant that the state is required to offer evidence as to the commission of the offense is answered in Ex parte Davis, Tex.Cr.App., 261 S.W.2d 322, and Ex parte Cascio, 140 Tex.Cr.R. 288, 144 S.W.2d 886.

$5,000 bail, in a case charging felony theft after two previous convictions for felonies less than capital, is not as a matter of law unreasonable or excessive.

The judgment is affirmed.

**TEXAS AND NEW ORLEANS RAILROAD COMPANY, Appellant,**

**v.**

**The H. ROUW COMPANY, Appellee.**

No. 12729.

Court of Civil Appeals of Texas. San Antonio.

Sept. 15, 1954.

Rehearing Denied Oct. 13, 1954.

Kelley, Looney, McLean & Littleton, Edinburg, Baker, Botts, Andrews & Shepherd, Houston, for appellant.

James E. Little, Edinburg, for appellee.

POPE, Justice.

■ This case concerns an attack upon the market value rule of damages applicable in the case of damages to an interstate shipment of perishables. The settled rule of damages in such cases is the difference between the market value of the perishables at destination, had the shipment arrived in good condition, and the market value of the shipment in the condition in which it actually arrived, less the freight charges. The only point in the case is the same one that was decided in Thompson v. H. Rouw Company, Tex.Civ.App., 237 S.W.2d 662, in which case it was decided that commissions should not be deducted from the damages computed on the basis of the wholesale market value.

This case arose on a motion for summary judgment, with each side seeking judgment. The carrier's motion for summary judgment states that there were twenty-six separate shipments involved, that there was a loss to the shipper on each of those shipments, and that it would pay each of those claims provided the shipper would forego any claim to any commissions computed on the loss. In other words, if a shipment sustained a loss of $100, computed on the basis of the wholesale market, the carrier offered to pay that sum less certain percentages that the carrier claimed was a commission that would not need to be paid by the shipper, since the produce was not sold by a commission merchant on the wholesale market. How the carrier assigned certain percentages as commissions to the separate shipments is not made known to us. The carrier's motion for summary judgment admitted that it owed for losses in each of the twenty-six shipments, and then added in each of the twenty-six instances, "If we pay the shipper the item of commission at destination which is an item of unincurred expense, we would be paying damages for the shipment where the shipper would receive more for the merchandise which arrived in a damaged condition than for the merchandise which arrived in a good condition."

The statement of facts reflects that the trial court pronounced judgment from the bench for the shipper for the full amount sued for, based upon the correct rule of damages stated at the outset of this opinion. The court deducted no commissions. The court then instructed the attorneys to prepare a judgment that would be so clear that this Court could not miss the point nor avoid the issue. The court's judgment finds that the shipper sued exclusively for his own benefit; that it would make no disbursement to any commission agents; that because it would be collecting for commission but paying none, it would actually be receiving more than if the shipment had arrived in good condition.

We recognize the point, chiefly because it is the same one we decided in Thompson v. H. Rouw Company, supra, but, by reason of the earnestness and care with which this case is pressed, we shall enlarge upon that opinion.

■ An important and controlling fact is that there was a wholesale market for each shipment at destination in both the Thompson case and in this case. Precedents which determine damages by methods other than a resort to a market value because none existed are inapplicable to the decision in this case. At the outset, also,

it should be observed that there is nothing new, unusual nor exceptional about the market value rule of damages. There is no room for any misgivings about the Thompson case disturbing settled law, but should we depart from the rule there announced, we would disturb the law of long standing. In McCaull-Dinsmore Co. v. Chicago, M. & St. P. Ry. Co., D.C., 252 F. 664, affirmed in 8 Cir., 260 F. 835, 836, the question was whether a bill of lading which fixed value at the point of origin was a limitation of liability. Mr. Justice Stone, speaking for the Circuit Court of Appeals, struck down the carrier's contention that the disputed clause in the bill of lading was inserted for the mere purpose of seeking certainty and stated: "There was no uncertainty as to the time or place of estimating value under the rule of common law—it was the destination." The court stated also, "The fair market value of the shipment at destination at the time when it should have been delivered, with interest, and less freight charges, was $1,422.11." That was the rule at common law, and that was the amount awarded by the court. Mr. Justice Holmes, speaking for the Supreme Court, affirmed the two lower courts and in so doing followed the common law rule of damages, measured by the wholesale market value. Chicago, Milwaukee and St. Paul Railway Company v. McCaull-Dinsmore Co., 1920, 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801. Scores of cases in an unbroken line confirm the rule. The Ansaldo San Giorgio I v. Rheinstrom Bros. Co., 294 U.S. 494, 55 S. Ct. 483, 79 L.Ed. 1016; Pennsylvania R. Co. v. Wm. H. Muller & Co., 4 Cir., 15 F.2d 535, certiorari denied 273 U.S. 748, 47 S.Ct. 449, 71 L.Ed. 872; American Ry. Express Co. v. Ewing Thomas Converting Co., 3 Cir., 292 F. 335; Bussey v. Memphis & Little Rock R. Co., C.C., 13 F. 330; Railway Express Agency v. Smith, D.C., 116 F.Supp. 609; Rio Grande & E. P. R. Co. v. T. A. Austin & Co., Tex.Com.App., 25 S.W.2d 306; Texas Mexican Ry. Co. v. Slaughter, Tex.Civ.App., 241 S.W.2d 749; Thompson v. A. J. Tebbe & Sons Co., Tex. Civ.App., 241 S.W.2d 627; Thompson v. Tankersley, Tex.Civ.App., 238 S.W.2d 263; Thompson v. Associated Growers of Brownsville, Tex.Civ.App., 162 S.W.2d 754; American Ry. Express Co. v. McDaniel, Tex.Civ.App., 20 S.W.2d 1104; Coulter v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 286 S.W. 559; Gulf, C. & S. F. Ry. Co. v. Stewart, Tex.Civ.App., 141 S.W. 1020; 8 Tex.Jur., Carriers, § 227; 9 Am.Jur., Carriers, § 781; 13 C.J.S., Carriers, § 264, notes 24 and 25.

From what has been said, it does not follow that the absence of a market value at destination prevents a shipper's recovery. When no market exists at destination, resort is made to other means to prove damages, as exceptions to the rule. The general rule is not abandoned, however, when all facts exist by which it can be applied. Appellant's authorities are exceptions to the general rule. We find no instances applying exceptions when a wholesale market actually exists. In the Thompson case we sought to point out that there was a wholesale market.

■ Appellant urges that the phrase, "full actual loss, damage, or injury to such property", used in Title 49 U.S.C.A. § 20 (11), was a statutory departure from the common law rule of damage, and that since its enactment, some measure other than the market value measure was adopted. We find no cases so stating, but the many cases cited above hold to the contrary. Some cases have expressly so stated. Chicago, Milwaukee and St. Paul Railway Company v. McCaull-Dinsmore Co., supra; Meltzer v. Baltimore & O. R. Co., D.C., 38 F.Supp. 391; Piazza v. Louisiana & Arkansas Ry. Co., La.App., 46 So.2d 670; Gore Products, Inc., v. Texas & N. O. R. Co., La.App., 34 So.2d 418; Thompson v. A. J. Tebbe & Sons Co., Tex.Civ.App., 241 S.W.2d 627, 629; Thompson v. H. Rouw Company, supra; Matthews-Carr v. Brown Express, Tex.Civ.App., 217 S.W.2d 75, 77; 13 C.J.S. Carriers, § 264, note 25, citing many cases. Appellant's attack upon the Thompson case ignores the general rule, and would read into the words, "full actual loss, damage or injury," a meaning different from the settled market value rule. Appellant would convert it into a "cost to the shipper" rule.

One exception to the general rule is that a shipper may recover in some instances on a basis other than market value when there is no market. United States v. Palmer & Parker Co., 1 Cir., 61 F.2d 455. Appellant has briefed this exception to the general rule. We shall examine those cases. In Baltimore & O. C. Terminal R. Co. v. Becker Milling Machine Co., 7 Cir., 272 F. 933, the court properly refused to fix the market price at the price to individual purchasers of specially manufactured machines. when the manufacturer controlled the price. That, of course, was not a valid market price. In Weirton Steel Co. v. Isbrandtsen-Moller Co., 2 Cir., 126 F.2d 593, certain parcels of tin plate were damaged. The tin was intended to be made into oil cans, and the tin was used for that purpose apparently at no loss in price. If the case is applicable at all there was no proof with reference to the wholesale market value of tin at Hong Kong, the destination. In Waterman S. S. Corp. v. United States Smelting, Refining & Mining Co., 5 Cir., 155 F.2d 687, 694, thirteen sheets of steel were lost overboard into the sea. The sole evidence of value was the replacement value at Seattle, which was the destination, and the Court stated: "In the absence of any contrary evidence, 'the value at Seattle' *may be taken as the market value.*" (Emphasis ours.) In Continental Distributing Co. v. Reading Co., 3 Cir., 168 F.2d 967, there was no proof of market value at destination of wine, the commodity which had been lost. Only one witness testified with reference to values and he undertook to prove value of the wine at Chicago by the cost method, which is the method appellant here sponsors. The witness fixed the value of wine by testifying to cost in New York rather than at destination. He then added to that cost other costs necessary to get it to Chicago, and also tax and duty. The method and the evidence were properly rejected. Meletio Sea Food Co. v. Gordons Transports, Inc., Mo.App., 191 S.W.2d 983, states the general rule as we have stated it. The case concerned a special food preparation, and the case makes no mention of its having a market price.

The facts show that the only proof of a market was the one customer to whom the food preparation was shipped, and that the sale was not lost. Matthews-Carr v. Brown Express, Tex.Civ.App., 217 S.W.2d 75, 76, was decided against the shipper because he made no proof of damage to the commodity in question. Significantly, however, the court stated: "There was no testimony as to the cash market value of the Mexican chewing gum at the various points of destination where the consignees were located, either in the condition in which it should have been delivered or in its damaged condition." The Court stated that fact two other times in the course of the same opinion. Reider v. Thompson, 5 Cir., 197 F.2d 158, was a case where there was proof of the market value of the commodity at destination. The Court reversed the trial court for dismissing the shipper's suit upon such prima facie proof. We find that on remand, the court correctly applied the market value measure of damages. Reider v. Thompson, D.C., 116 F.Supp. 279; United States v. Northern Pac. Ry. Co., D.C., 116 F.Supp. 277, concerned damages to a shipment of potatoes and it is the only case called to our attention which in our opinion varies the settled rule. It awarded the contract price rather than the market value, but it should be observed even there that the potatoes belonged to the United States under the Price Support Program and were not a part of the free commercial market at all. Hence, appellant's authorities are those wherein there was no valid market value, and, of course, resort was then made to other rules.

This case and the Thompson case are readily understandable if we keep in mind the general wholesale market value rule of damages, and then further keep in mind the fact that certain exceptions to that rule become operative, when, for some reason, it is impossible to prove a wholesale market value. American Ry. Express Co. v. Parisian Hat Co., Tex.Civ.App., 240 S.W. 947. The precedents relied upon by the appellant are not holdings inconsistent with the general rule, but are well recognized exceptions to the general rule, which are not applica-

ble here, where there was a readily ascertained market and it was proved. 15 Am. Jur., Carriers, § 125; 13 C.J.S., Carriers, § 264 (c, d).

Appellant insistently urges that the Thompson case varies the rule of damages announced by the United States Supreme Court in Illinois Cent. R. Co. v. Crail, 281 U.S. 57, 50 S.Ct. 180, 181, 74 L.Ed. 699, 67 A.L.R. 1423. The two cases are in complete harmony. The trial court in the Crail case stated the general rule as we have stated it and then refused to allow the consignee of a coal shipment, damages computed at retail prices for a small quantity of coal that was lost in shipment. The court held that damages measured by retail prices would be improper and that the correct measure was the wholesale market value on the basis of the entire carload of coal. The Supreme Court affirmed this view, expressly stating that the circuit court erred in awarding damages based on the "retail value of the coal", and that the trial court correctly awarded "judgment for the wholesale value of the coal not delivered." That is exactly what we held in the Thompson case, and the case is not authority that something less than the wholesale value should be awarded, as appellant urges upon the Court here by insisting that commissions should be subtracted from the wholesale market value. The Crail case rejects a retail price and accepts a wholesale value as the basis for measuring damages. The case by no construction can mean that the wholesale value should also be rejected. The Court stated in part:

"In the absence of special circumstances, the damage for shortage in delivery by the seller of fungible goods sold by quantity is measured by the bulk price rather than the price for smaller quantities, both at common law, see Morgan v. Gath, 3 Hurl. & C. 748 [159 Eng. Reprint, 726]; Avery v. Willson, 81 N.Y. 341, 37 Am.Rep. 503) and under section 44 of the Uniform Sales Act. Likewise, we think that the wholesale market price is to be preferred as a test over the retail when, in circumstances like the present, it is

clearly the more accurate measure. Brown Coal Co. v. Illinois Central R. Co., 196 Iowa 562, 192 N.W. 920. See State [Use of Hayden] v. Smith, 31 Mo. 566; Wendnagel v. Houston, supra (155 Ill.App. 664, 666, 667); Wood & Co. v. Chicago, M. & St. P. R. Co., 320 Ill. 341, 151 N.E. 229. Compare Heidritter Lumber Co. v. Central R. Co., 100 N.J.L. 402, 122 A. 691, 125 A. 926; Leominster Fuel Co. v. New York, N. H. & H. R. Co., 258 Mass. 149, 154 N.E. 831, 50 A.L.R. 1464, cited as supporting the conclusion of the court below. In these cases it does not clearly appear whether the consignee suffered special damage by reason of the shortage, measured by the retail price, or whether he did or could replace it at the wholesale price in the ordinary course of business."

■ There are other reasons that the market value rule must be followed rather than the adoption of a new rule based on actual costs to a shipper or consignee. Kyle v. Laurens Railroad Company, 10 Rich Law, S.C., 382, 383, with reference to the claim that commissions should be deducted, used the following language which accords with the Thompson case:

"The answer to the second question (whether or not the Defendant railroad company was entitled to deduct the commission), cannot, I think, be well doubted after it is properly considered. If, as in the case of Bridge v. Austin, 4 Mass. 115, he undertook to transport and sell, and for so doing he was to have 5% commission, it may well be in the case of a loss he would have the right to deduct commission, for that was part of his compensation for his services touching the article lost. But in these cases the carrier had nothing to do but deliver in Charleston. If a factor might have sold, it was a matter in which the Laurens R. R. had no interest whatsoever. To illustrate still further, suppose the cotton had reached Charleston depot and carrier had refused to deliver and

trover had been brought what would have been the plaintiff's damage? The value of the article, deducting the freight, and adding interest on the net value. In such a case, commission could not have been talked about. How, in any case, can any deduction be made for that which was to be subsequent to carrier's discharge of liability, by delivering the parcel? The authorities are, I think, clear against such allowance. Sedgwick on Damages, C. 13, P. 369, tells us the rule whereby the damages are fixed as a rule of law. At pages 370, 371, he tells us that the rule as to carriers is the value of the article lost or not delivered at the place of destination, deducting his freight. The same is substantially the ruling in Gillingham v. Dempsey, 12 Serg. & R., Pa., 183."

If, as the carrier urges, "full actual loss, damage, or injury to such property," means that the actual cost to a shipper or consignee should be the rule when the wholesale market value of produce is strong and high, it very well could be that the shipper, when the wholesale market is weak and low, may join the carrier in its contentions and urge that it should be permitted to total its "full actual costs" as a measure of recovery without regard to the market price. The rule, so applied equally, would then make the carrier an insurer that the shipper would never lose its cost on any of its shipments, whatever the market may be. Such has never been the rule in either instance.

The trial court, acting under the impression that the Thompson case announced strange law, made strong findings with the suggestion to counsel that this Court may avail itself of the opportunity to overrule our former opinion. The findings are an overstatement of the case, as reflected by some of the account sales, which on their face show that commissions were owing and that some had actually been paid; but appellee, winning its case anyway, made no objections, and we take the findings without limitation. They include the findings that the shipper would collect and keep the full amount of the judgment, that no commissions were to be paid to the commission agent, that the market value rule gives to the shipper a full market value recovery without having to pay commissions which he would have paid if the produce had arrived in good condition and been sold. The trial court concludes as a matter of law that the shipper recovered more than would have made him whole.

■ We are at a loss to know how the court could make a judgment that would bind a commission agent as against the shipper when the agent is not a party to the suit. Whether the agent will sue and recover against the shipper was not before the court, and the court could write no judgment in this case denying him his rights should he seek to assert them. Those findings and conclusions, so far as the rights of the commission agent are concerned, are suppositions.

■ But it makes no difference to the correct rule. Title 49 U.S.C.A. § 20(11) states who may sue and what he may recover. It states that the carrier "shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon". In Thompson v. H. Rouw Company we stated, as forcefully as we could, that either the shipper or the consignee could sue and recover for all. But we shall say it again. "The matter of accounting between a shipper and consignee is of no concern to the carrier." Thompson v. H. Rouw Company, 237 S.W.2d 662, 666. The consignee, or the commission agent has an interest in the shipment, and in our former opinion we stated the reasons and cited many authorities so holding. We did not discuss the authorities, thinking that they could be studied without lengthening the opinion. We shall, however, quote from one of them by way of summing up what the cases hold. 13 C.J.S., Carriers, § 249 (k), in part states:

"One who has a special property in the goods shipped, or a beneficial inter-

est in the performance of the contract, such as a broker, factor, or bailee, may sue the carrier to recover for loss of, or injury to the goods, although the general owner may also sue.

"One who has a special property or interest in the goods shipped, or a beneficial interest in the performance of the contract, is entitled to maintain an action for their loss or injury.

"A bailee has such special property in the goods as entitles him to maintain an action for loss of or injury thereto.

"If the consignee has a special property in the goods as factor or broker, he has such an interest in the shipment as will entitle him to maintain an action for loss of or injury thereto. It is not necessary to his capacity as a plaintiff that he is entitled to all the damage, although he may recover the full damage done; the judgment would bar another action by the real owner, and the owner's share would be held by the consignee to be accounted for by him. * * *

"General or special owner. The right of one having a special or beneficial interest in the goods shipped to maintain the action, as stated above, does not preclude an action by the general owner. Either one may sue, and whichever first obtains damages it is a full satisfaction."

Hence, under the statute, the shipper may sue and make "full" recovery for every one having an interest in the shipment, and the trial court, in concluding that the shipper received more than would make him whole, failed to take into account that the statute intends for the plaintiff against a carrier to recover for himself as well as for others. A conclusion that others will be unable to recover, by suit or otherwise, from the shipper is in violation of the Federal statute, and the trial court ruled correctly when it disregarded its own conclusion.

The judgment is affirmed.