Yazoo & M. V. R. Co. *v.* Delta Grocery & Cotton Co.

(Division A.  Feb. 4, 1924.)

[98 So. 777.  No. 23774.]

1. Carriers.  *Measure of damages for loss of interstate shipment determined by common law, as applied by federal courts, and as modified by federal statutes.*

   In an action for loss of interstate shipment, the measure of damages is a federal question, and must be determined by the rules of the common law, as interpreted and applied in the federal courts, and as modified by federal statutes.

2. Carriers.  *Measure of damages for loss of goods during interstate transportation stated.*

   Under the Cummins Amendment to the Act to Regulate Commerce (U. S. Comp. St., section 8604a), making interstate carrier liable for the "full actual loss, damage or injury" to property, the measure of damages in wholesale grocer's action for loss of goods during interstate transportation was the market value of the goods at the point of destination, and not the invoice price, plus freight.

Appeal from circuit court of Coahoma county, Second District.

Hon. W. A. Alcorn, Jr., Judge.

Suit by the Delta Grocery & Cotton Company against the Yazoo & Mississippi Valley Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Burch, Minor & McKay,* and *F. H. Montgomery,* for appellant.

The point in controversy is whether plaintiff, a wholesale grocer, is, on the facts of this case, entitled to recover the replacement value of the damaged flour, i. e., the invoice or cost price, plus the freight, if paid by plaintiff, or the resale value, i. e., the price at which plaintiff could have sold the flour to its customers in less than carload lots. The trial judge peremptorily instructed the jury to find for the plaintiff on the basis of the price at which the plaintiff could have resold the commodity to its customers at Clarksdale in less than carload lots, plus interest.

The shipment being interstate, the question as to the correct measure of damages is a Federal question. *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 57 Law Ed. 314; *Southern Express Co.* v. *Byers,* 240 U. S. 612, 60 Law Ed. 825; *Railroad* v. *Davis,* 112 Miss. 119; *Railroad* v. *Rogers,* 116 Miss. 99; *Telegraph Company* v. *Eubanks,* 121 Miss. 530. Under Federal Statute and decisions, the measure of damages is compensation for plaintiff's "full actual loss." Cummins Amendment to Act to Regulate Commerce, ch. 176, Act March 4, 1915, 38 Stat. at L. 1196, Comp. Stat., sec. 8604a, 4 Fed. Stat. Anno. (2 Ed.), p. 506; *McCaull-Dinsmore Co.* v. *Chicago, etc., R. Co.,* 253 U. S. 97, 64 L. Ed. 801.

The measure of damages for failure of a common carrier to deliver at destination a part of a carload shipment of merchandise, consigned to a wholesale merchant, is the reasonable market value of such merchandise in carload

lots at the time and place of delivery. 10 C. J. 395, sec. 606; *Mobile, etc., R. Co.* v. *Jurey,* 111 U. S. 584, 28 L. Ed. 527; *New York, etc., R. Co.* v. *Estill,* 147 U. S. 591, 37 L. Ed. 292; *Canadian Pac. R. Co.* v. *Wieland,* 226 Fed. (C. C. A.) 670; *Railroad* v. *Ragsdale,* 46 Miss. 458-479; *Jamison* v. *Moon,* 43 Miss. 598-600; *Railroad* v. *Millsaps,* 76 Miss. 855; *Railroad* v. *Cotton Co.,* 94 Miss. 351.

In the case of merchandise which may be readily replaced, or secured in unlimited quantities at the point of origin, such market value is the cost of replacement, i. e., the invoice price, plus freight, is paid with interest. *Brown Coal Co.* v. *I. C. R. Co.,* 192 N. W. (Iowa) 920; 3 Sutherland on Damages, 1098; 1 Michie on Carriers, 597, sec. 891; 2 Moore on Carriers, 582-3, sec. 1; 3 Hutchinson on Carriers, 1610, sec. 1360; *Baltimore, etc., R. Co.* v. *Becker Milling Mach. Co.,* 272 Fed. (C. C. A.) 933-35; *Lawrence* v. *Porter,* 63 Fed. (C. C. A.) 62-64; *M. & M. Transp. Co.* v. *Branch,* 282 Fed. (C. C. A.) 494; *Quanah, etc., R. Co.* v. *Novit,* 199 S. W. (Tex.) 496; *Texas, etc., R. Co.* v. *Payne,* 38 S. W. (Tex.) 366; *State ex rel.* v. *Parsons,* 84 S. W. (Mo.) 1019; *Cincinnati, etc., R. Co.* v. *Hansford,* 100 S. W. (Ky.) 281; *Tuttle-Chapman Coal Co.* v. *Coaldale Fuel Co.,* 136 Iowa 382; *Waters, et al.* ̄. *Becker, et al.,* 186 N. W. (Wis.) 167; *Barry* v. *Los Angeles, etc., R. Co.,* 189 Pac. 70; *Payne* v. *White House Lbr. Co.,* 231 S. W. (Tex.) 417; *Kilpatrick* v. *Whitmer,* 103 N. Y. 75; *Chicago, etc., R. Co.* v. *Broe,* 86 Pac. (Okla.) 44; *State, to use, etc.,* v. *Smith,* 31 Mo. 566; *Smith* v. *New York, etc., R. Co.,* 196 N. Y. Supp 521; *American Ry. Exp. Co.* v. *Parisian Hat Co.,* 240 S. W. (Tex.) 947; *Wallace* v. *Vigus,* 4 Blackford's Rep. 260.

The resale value at destination in same quantities is not the proper measure of recovery for failure to deliver a part of a carload shipment of merchandise to a wholesale dealer, since such resale value includes elements for which the carrier is not liable.

*Curtrer & Smith,* and *W. T. Covington, Jr.,* for appellee.

The measure of damages is to be determined by the laws of the United States, and the decisions of the courts thereon. The most recent regulation of the measure of damages in cases of this character, is the Cummins Amendment to the Act to Regulate Commerce, chapter 176, Act of March 4, 1915, 38 Stat. at L. 1196, U. S. Compiled Stat., sec. 8604a, 4 Fed. Stat. Anno. (2 ed.) 506.

The construction to be placed upon the words "full actual loss, damage or injury," will determine the measure of damages in this case. Since the enactment of the Cummins Amendment, the supreme court of the United States has had occasion to pass upon this question, and has specifically held in accordance with appellee's contention. *McCaull-Dinsmore Co.* v. *Chicago, etc., R. Co.,* 253 U. S. 97, 64 L. Ed. 801.

In order to arrive at the "full actual loss, damage or injury," the rule of the common law must be applied, disassociated and disconnected from any decision existing prior to the Cummins Amendment, which was not strictly based upon the common law.

It is, therefore, elemental, under the facts in the case now before the court, that had the carrier performed its contract, appellee would have had five and five-eighths barrels of flour, worth sixty-three dollars and fifty-six cents, on February 9, 1921. This would be in conformity with the announcement of the supreme court, in the Dinsmore case, *supra;* "That the actual loss caused by breach of a contract, is the loss of what the contractee would have had if the contract had been performed." The carriers' common-law liability is the value of the goods at the point of destination, at the time they should have been delivered. *McCaull-Dinsmore Co.* v. *Chicago, Milwaukee & St. Paul Railway Company,* 252 Fed. 664; 260 Fed. 835; 253 U. S. 97 (64 L. Ed. 801); 10 C. J., secs. 606, 395.

Appellant, however, does not contend that this is not the law, but contends that the resale or retail value, more than compensates a consignee, who is a wholesale dealer,

134 Miss.—54.

for his actual loss sustained by reason of failure to deliver all or part of a carload shipment.

In the case at bar, the facts must control. The actual loss, sustained by appellee, must be determined by the wholesale price of flour in Clarksdale. The cases cited by appellant deal with a situation where either the market value was not testified to or unable to be determined, or else, where the retail value was proven.

The circuit court of appeals for the Fourth Circuit, in the case of *Norfolk & W. Ry. Co.* v. *Ft. Dearborn Coal & Export Co.,* 280 Fed. 264, held that the measure of damages for the confiscation of coal by the carrier, was the market value of the coal at the time and place of confiscation and not the cost of coal to the shipper.

The McCaull-Dinsmore case was again cited and discussed, in the case of *Wabash Ry. Co.* v. *Holt,* 263 Fed. 72, and there again the court held that the market value, at the time and place of delivery, is the test. See, also, *Canadian Pac. Ry. Co.* v. *Wieland,* 226 Fed. 670, 678, citing Hutchinson on Carriers, sec. 1360.

HOLDEN, J., delivered the opinion of the court.

This suit was brought by the Delta Grocery & Cotton Company to recover sixty-three dollars and fifty-six cents against the Yazoo & Mississippi Valley Railroad Company as damages for the loss of five and five-eighths barrels of flour shipped from Ft. Collins, Colo., to the Grocery Company at Clarksdale, Miss. From a peremptory judgment in favor of the plaintiff for that amount, the railroad company appeals.

The sole question presented is as to the proper measure of damages for the loss sustained. The exact point in controversy is whether the appellee, a wholesale grocer, is entitled to recover the replacement value of the damaged flour (that is, the invoice or cost price, plus the freight), or the resale value (that is, the price at which the flour could have been sold, or, we will say, the reason-

able cash market value), at the point of destination, Clarksdale, Miss. If the measure of recovery is to be the value of the flour at Clarksdale, then the judgment for sixty-three dollars and fifty-six cents is correct; but, if the recovery is to be based upon the cost price or value at the point of shipment, or the replacement value, then the verdict should have been for fifty-eight dollars and seventy-three cents.

The facts are not in dispute. On September 9, 1921, a carload of flour consigned to appellee, plaintiff below, reached Clarksdale, Miss. It contained two hundred and fifty barrels, or two thousand seven hundred twenty sacks. It was shipped from Ft. Collins, Colo., to Clarksdale, Miss., consigned to shipper's order, notify. The bill of lading was attached to a draft drawn on plaintiff and sent through the banks in the usual way. Plaintiff paid the draft, took up the bill of lading, and surrendered it to defendant railroad company, and thus became the owner of and entitled to the possession of the carload of flour at Clarksdale. Upon opening the car, ninety twelve-pound sacks, making five and five-eighths barrels, were found to be damaged by water. Plaintiff refused to unload or accept the damaged flour, but did accept the balance of the carload. Plaintiff is a wholesaler, who buys only in carload lots.

The damaged flour cost plaintiff ten dollars and forty-four cents per barrel delivered at Clarksdale. Plaintiff recovered eleven dollars and thirty cents per barrel for the damaged flour, which represents what plaintiff could have sold the flour for, or its reasonable wholesale cash market value at the point of destination, Clarksdale, Miss. The shipment being interstate, the correct measure of damages is a federal question, and must be determined by the rules of the common law, as interpreted and applied in the federal courts, and as modified by federal statutes.

We shall omit discussing the question as to the measure of damages in such cases before the enactment of the Cummins Amendment to the Act to Regulate Commerce

(Act March 4, 1915, chapter 176, 38 Stat. 1196 [U. S.
Comp. Stat., section 8604a; Fed. Stat. Anno. (2d Ed.)
p. 506]), because the Cummins Amendment, we think,
provides that the liability of the carrier shall be the
"full actual loss" to the holder of the bill of lading at
the point of destination.   That part of the Cummins
Amendment, pertinent and relevant in this case, is as
follows:

"And any such common carrier, railroad, or transpor-
tation company so receiving property for transportation
from a point in one state, territory, or the District of
Columbia to a point in another state or territory,  . . .
shall be liable to the lawful holder of said receipt or bill
of lading  . . .  for the full actual loss, damage, or
injury to such property caused by it or by any such com-
mon carrier.   . . ."

The construction to be placed upon the words used in
the Cummins Amendment, to-wit, "full actual loss, dam-
age, or injury," will determine the measure of damages
in the case before us.

We understand that, prior to the enactment of the
Cummins Amendment, the bills of lading specified that,
in the event of loss, injury, or damage to goods *in trans-
it,* the measure of damages would be based on the value
of the property at the time and place of shipment.   The
federal courts held this to be a reasonable regulation.
In effect, replacement cost value prior to the enactment
of the Cummins Amendment had been adopted as a rule
of the measure of damages by many of the courts of the
United States; but since the enactment of the Cummins
Amendment the supreme court of the United States has
had occasion to pass upon this question, and held im-
pliedly, if not expressly, that the measure of recovery in
such cases is the actual value of the lost property at the
point of destination; that is to say, the consignee is en-
titled to recover the market value of the property, or the
full actual loss to him, at the point of destination.

The case we refer to as sustaining this position is *Chicago, etc., R. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97, 40 Sup. Ct. 504, 64 L. Ed. 801. This decision was affirmed by the United States circuit court of appeals, in 260 Fed. 835, and the supreme court of the United States affirmed the decision of the court of appeals. We think this case is controlling in the case before us, and that the true rule is that the measure of recovery is "the actual loss caused by breach of a contract, is the loss of what the contractee would have had if the contract had been performed," as said by the court in the *McCaull-Dinsmore Case, supra.* Therefore it is our conclusion the recovery in the case at bar is to be measured by the actual loss to the consignee, which must be determined by the actual market value of the property at Clarksdale, Miss., which was eleven dollars and thirty cents per barrel for the flour undelivered to the appellee.

In view of this conclusion, we think the judgment of the lower court was correct, and it is affirmed.

*Affirmed.*