### CRAIL v. ILLINOIS CENT. R. CO.

(Circuit Court of Appeals, Eighth Circuit.
May 10, 1926.)

No. 7146.

1. **Carriers ⬤135—Amount recoverable by shipper for coal lost in transit determined by market price in quantity such as that lost.**

A carload of coal, when delivered by the carrier, was 5,500 pounds short. To purchase that quantity and no more in the open market at the place and time of delivery, the shipper would have been required to pay $9.70 per ton. *Held*, that such price measured his loss, and not the wholesale price when bought in carload lots.

2. **Carriers ⬤135—That market value of coal which a shipper must pay to replace a loss in transit includes a dealer's profit does not change the rule that such value measures his damages.**

Under the rule that the measure of damages recoverable for short delivery by a carrier of coal or other like commodity is the market value of the quantity lost at the agreed place of delivery, it is not an objection that such value includes as an element a profit to dealers.

3. **Carriers ⬤135—Measure of damages for short delivery is amount owner must pay in market to replace quantity lost.**

The true measure of damages for breach of a contract to transport and deliver coal or other like commodity at a certain place is the fair average market value, at the time and place of delivery, of such a quantity of like coal or commodity as the carrier failed to deliver as the amount it would be necessary for the shipper or owner to pay in the open market to replace the quantity lost.

In Error to the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Action by G. I. Crail, doing business as the P. McCoy Fuel Company, against the Illinois Central Railroad Company. From the judgment, plaintiff brings error. Reversed and remanded, with directions.

For opinion below, see 2 F.(2d) 287.

Stanley B. Houck, of Minneapolis, Minn., for plaintiff in error.

Edwin C. Brown, of Minneapolis, Minn. (Brown & Guesmer and Charles A. Loughin, all of Minneapolis, Minn., and W. S. Horton, of Chicago, Ill., on the brief), for defendant in error.

Before SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

SANBORN, Circuit Judge. The plaintiff was a wholesale and retail dealer in fuel in Minneapolis, Minn., where he had a coal yard for the delivery of coal to him in that city. The defendant was a common carrier. A carload containing 88,700 pounds of coal was delivered to it, the initial carrier, at Royalton, Ill., for transportation under a uniform bill of lading to Minneapolis, Minn. During its transportation the plaintiff bought the bill of lading and became the owner of the coal. The defendant caused it to be delivered at its destination in the plaintiff's yard in Minneapolis, less 5,500 pounds, which the defendant or one or more of its connecting carriers had lost out of it in transit. The plaintiff sued the defendant for the fair market value of this 5,-500 pounds at $9.70 per ton, which was the retail market value of such coal in such a quantity at Minneapolis at that time. The defendant insisted that it was liable for only $5.75 per ton, which was the wholesale market value of such coal at Minneapolis at that time in lots of 60,000 to 120,000 pounds.

The case was tried by the court without a jury on a stipulation of the facts by the parties, and it held that the defendant was liable to pay to the plaintiff for this 5,500 pounds of coal at the rate of only $5.75 per ton, the wholesale market value at Minneapolis of carload lots of such coal in quantities of 60,000 to 120,000 pounds. The writ of error challenges this ruling.

The parties stipulated, in addition to the existence of the wholesale and retail market values and the other facts which have been recited, that, disregarding the freight charges on the 5,500 pounds at the time of the delivery of the carload, less the 5,500 pounds, the reasonable average market value at Minneapolis delivered to the purchaser at his place of business or home of the kind of coal contained in the shipment in lots of 5,500 pounds, was $9.-

70 per ton, and that such coal in such quantities as 5,500 pounds could not be purchased in Minneapolis at the time the shipment arrived for less than $9.70 per ton in that market, that the plaintiff had not sold or contracted to sell the coal in the shipment, that he did not actually buy coal for the special purpose of replacing the 5,500 pounds lost, that he had coal on hand of the same class sufficient to meet the demands of his business, and that he bought coal in carload lots before and after the shipment, paid the freight and handled the shipment himself, at the rate of $5.50 per ton f. o. b. Royalton, Ill. The court rendered judgment against the defendant for only $5.75 per ton, the market value at Minneapolis of coal in carload lots of from 60,000 to 120,000 pounds.

Counsel for the plaintiff insists that the measure of damages for the breach of a contract to sell and deliver or to carry and deliver at a certain time and place coal or other like personal property is the market value of the quantity of the commodity the contractor failed to deliver at the time and place of its agreed delivery, that it is the amount the contractee could have sold the lacking quantity for, and that he would have been compelled to pay for that quantity in the open market at the time and place of delivery in order to make himself whole. This contention does not seem unjust or unreasonable. The time and place of delivery and the market value then and there it is conceded is the ordinary measure of damages. If at that time and place the defendant had taken this 5,500 pounds of coal out of the carload and sold it at its retail market value at the time and place of delivery, it would have received $9.70 per ton for it, not including freight, and in that case it seems reasonable that the plaintiff should have recovered from it that amount. The defendant through its fault, or the fault of others for which it is liable, took by its loss thereof this 5,500 pounds of coal from the carload, and thereby deprived the plaintiff of the $9.70 per ton which he could and probably would have sold it for.

The suggestion of counsel for the defendant that the plaintiff had bought and could have bought a carload of 60,000 to 120,000 pounds of coal for $5.50 per ton and freight and could have taken 5,500 pounds of that purchase to replace the coal the defendant lost is in our opinion neither relevant nor persuasive. No duty rested upon the plaintiff to purchase a carload of coal in order to restore the loss of the 5,500 pounds which the defendant's negligence inflicted upon him. Another

contention of defendant is that the plaintiff is not entitled to recover the retail market value, because that retail market value includes overhead, storage, cartage, handling expenses of unloading and delivery, and a retailer's profit. But there is no evidence or stipulation regarding the amounts of these items, no proof that they would have been incurred in making a retail sale of 5,500 pounds, nothing to show that this could not have been made without expense in the yard where the coal was to be delivered, and there is a stipulation that the plaintiff could not have purchased 5,500 pounds and no more in the retail market in Minneapolis at that time for less than $9.70 per ton.

It was to avoid the consideration of just such items and matters as these that the common-law rule that the market value of the property at the time and place of agreed delivery under contracts of sale and transportation or at the time and place of conversion should be the measure of the compensation required to make the injured party whole. In Brown Coal Co. v. Illinois Cent. R. Co., 196 Iowa, 562, 192 N. W. 920, a case upon which defendant's counsel seem chiefly to rely, a dealer at wholesale and retail in coal sued the carrier for the loss in transit of 5,200 pounds out of a carload of 109,700 pounds, and proved that the market value at retail of the 5,200 pounds at the time and place of delivery was $15 per ton; that that $15 was made up of these items: Mining cost, $4.05; freight, $4.98; unloading, $0.35; cartage, $1.75; war tax, $0.15; overhead, $1.60; profit, $2.12. The court discussed and considered each of these items, and finally allowed the plaintiff to recover the mine cost, the freight, and the war tax, and denied it the recovery of anything more.

A careful reading and consideration of the opinion in this case has failed to persuade that the method there pursued is the legal, approved, or practical way to measure damages in cases for breach of contracts of transportation or sale. If such a method were generally adopted, the measure of such damages would become much more doubtful, uncertain, and difficult to ascertain, and much more time and labor of dealers and courts would be required to discover it, than would be necessary to apply the general rule that the simple market value, not its component parts, nor the sources from which it is derived, nor its other concomitants, shall measure such damages. "This allows," as was well said by Judge Gray in Cutting & Another v. Grand Trunk Ry. Co., 13 Allen (Mass.) 381, 386, "to the person

injured the value, as exactly as it can be estimated in money, of that of which he has been finally deprived by the wrongful act of the defendant, and is the most simple and just rule, as well as the easiest to be applied; for it depends on the general market value of the goods, and involves no question of contingent or speculative profits, and no consideration of any other contracts made or omitted to be made by the plaintiff in view of his contract with the defendant." U. S. v. New River Collieries Co. (C. C. A.) 276 F. 690, 692.

[1] Apply this rule to the case in hand and the doubt and difficulty vanish. The plaintiff was finally deprived of 5,500 pounds of coal, which the defendant agreed to deliver to him at his coal yard in Minneapolis; the market value of that amount of coal of that kind at the time and place the defendant was bound to deliver it was $9.70, not including freight. He could have sold it for that amount in Minneapolis; he could not have bought that amount and no more in that market to make himself whole for less than that amount. Such was the conclusion of the Supreme Court of New Jersey in Heidritter Lumber Co. v. Central R. Co., 122 A. 691, 692, wherein the carrier in the transportation of a carload of coal from Nottingham, Pa., to Elizabeth, N. J., lost 5.04 tons, and that court held that the owner was entitled to recover the retail market value of this amount of coal of the same kind at Elizabethport. That case was taken to the Court of Errors and Appeals of New Jersey and there unanimously affirmed. 125 A. 926.

[2] Counsel urge the objection to the recovery of the retail market value of this 5,500 pounds of coal that there is in that retail market value a retailer's profit, but that objection is untenable. Such an objection would be as tenable to the recovery of the wholesale market value as it is to the retail market value. In the case in hand there is a wholesaler's profit of $0.25 a ton in the wholesale market value of $5.75 per ton, which the court below allowed the plaintiff. In Brown Coal Co. v. Illinois Cent. R. Co., supra, the court cut out all profit, wholesale and retail, and allowed only the cost of the coal at the mine, freight, and the war tax, in the face of the well-settled rule that the measure of damages in such cases is the market value, either wholesale or retail, at the agreed place of delivery. The truth is that in the market value, whether it be wholesale or retail, a profit to the shipper or owner almost always inheres. If it did not, the owner would not ship and transportation would practically cease. His inducement to pay or to agree to pay the freight is this

profit, and when the carrier by loss in transit deprives him of it he is entitled to recover it back. In Yazoo & M. V. R. Co. v. Delta Grocery & Cotton Co., 134 Miss. 846, 98 So. 777, 778, where there was a profit of $0.86 a barrel to the shipper in the recovery of the market value at the place of delivery, the plaintiff recovered that market value, including the $0.86 profit, and the judgment therefor was affirmed.

In Chicago, etc., Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 100, 40 S. Ct. 504, 64 L. Ed. 801, the judgment for the market value at the place of destination, which the owner recovered, and the judgment for which the Supreme Court affirmed, contained a clear profit of the difference between $1,200.48, the market value at the time and place of shipment, and $1,422.11, the market value at the time and place of destination. In its opinion the Supreme Court said: "The rule of the common law is not an arbitrary fiat, but an embodiment of the plain fact that the actual loss caused by breach of a contract is the loss of what the contractee would have had if the contract had been performed, less the proper deductions, which have been made and are not in question here." In Southern Pac. Co. v. Darnell-Taenzer Co., 245 U. S. 531, 533, 38 S. Ct. 186, 62 L. Ed. 451, the Supreme Court said: "The general tendency of the law, in regard to damages at least, is not to go beyond the first step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss."

This was an interstate shipment; this action is founded on a uniform bill of lading, and is governed by the provision of section 8604a, U. S. Compiled Statutes, to the effect that any such common carrier receiving property for transportation from a point in one state to a point in another state, "shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon * * * for the full actual loss, damage, or injury to such property caused by it or by any such common carrier * * * over whose line or lines such property may pass within the United States." The briefs of counsel in this case and the opinions in the cases to which they refer are exhaustive and instructive. They have been given consideration and our conclusion is that:

[3] The true measure of damages for the breach of a contract to transport and deliver coal or other like personal property at a certain place and time is the fair average market value at the time and place of delivery of such a quantity of like coal or other property

as the contractor failed to deliver as agreed. It is the amount it would have been necessary for the shipper or owner to pay in the open market at the time and place of delivery for such a quantity and kind of coal or other property as the carrier failed to deliver as it agreed. Heidritter Lumber Co. v. Central R. Co. (N. J. Sup.) 122 A. 691, 692; Id. (N. J. Err. & App.) 125 A. 926; Chicago, etc., Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 40 S. Ct. 504, 64 L. Ed. 801; Southern Pac. Co. v. Darnell-Taenzer Co., 245 U. S. 531, 533, 38 S. Ct. 186, 62 L. Ed. 451; Marsh v. McPherson, 105 U. S. 709, 717, 718, 26 L. Ed. 1139; U. S. v. New River Collieries Co. (C. C. A.) 276 F. 690, 692; Harvey v. Connecticut & Passumpsic Rivers R. R. Co., 124 Mass. 421, 423, 26 Am. Rep. 673. Under this rule the plaintiff, who could have sold this 5,500 pounds of coal at the market value in Minneapolis at the time it was agreed to be delivered for $9.70 per ton, and could not have purchased 5,500 pounds of such coal and no more in that market at that time to make himself whole without paying $9.70 per ton, not including freight, for 5,500 pounds of like coal, was entitled to recover the value of the coal lost at the rate of $9.70 per ton, and the judgment below must be reversed, and the case remanded to the court below, with directions to grant a new trial.

It is so ordered.