## W. A. HOVER & CO. v. DENVER & R. G. W. R. CO.

(Circuit Court of Appeals, Eighth Circuit. February 21, 1927.)

No. 7171.

**I. Trial ⬅︎177—Parties requesting directed verdict at close of testimony, with nothing more, waive right to jury trial.**

In federal courts, where each party to action requests directed verdict in his favor at close of testimony, and does nothing more, parties will be held to have waived right to trial by jury, and to have constituted court a trier of questions both of law and fact.

**2. Trial ⬅︎177—Both parties' request for directed verdict, with reservation of right to submit further requests, held not waiver of right to jury trial.**

Where, on request for directed verdict by both parties, they reserved right to submit further requests for instructions if directed verdict was refused, there was not a waiver of right to have disputed questions of fact, if any, submitted to jury.

**3. Negligence ⬅︎6—Failure to perform duty imposed by statute for benefit of person injured is negligence.**

Where statute imposes duty on person for protection or benefit of others, and he neglects to perform that duty, he is guilty of negligence, and is liable to those for whose protection or benefit it was imposed for injuries proximately caused by such negligence.

**4. Commerce ⬅︎85(1)—Interstate Commerce Commission is not legislative body, and cannot make or modify law.**

The Interstate Commerce Commission is not legislative body, and cannot make or modify the law, having power only to execute and enforce.

**5. Commerce ⬅︎85(2)—Regulation of Interstate Commerce Commission relative to shipping carbon bisulphide, being unauthorized, imposed no duty on shipper (Comp. St. §§ 10402–10415; Act June 18, 1910, § 12 [36 Stat. 551]).**

Regulation by Interstate Commerce Commission relative to shipping carbon bisulphide in metal cans of not less than 28-gauge, being unauthorized under Act March 4, 1909 (Comp. St. §§ 10402–10415), and Act June 18, 1910, § 12 (36 Stat. 551), imposed no duty on shippers, and violation thereof by shipper does not constitute negligence as matter of law, or evidence of negligence.

**6. Carriers ⬅︎36—To recover for shipper's failure to comply with interstate commerce regulation, there must be proof that failure contributed to injury.**

In order to warrant recovery by carrier against shipper for damages alleged to have been caused by failure to comply with interstate commerce regulation requiring shipping of carbon bisulphide in metal cans of 28-gauge, it is necessary to prove failure to fulfill such obligation caused injury.

**7. Carriers ⬅︎76—Amount paid by carrier to shippers, whose goods were destroyed, is not measure of damage against defendant shipper, whose negligence was alleged to have caused injury.**

Amount paid by claim department of railroad to shippers filing claims for goods claimed to have been destroyed is not true measure of damage against shipper whose negligence was alleged to have caused injury, since railroad's liability to shippers was only for fair market value of shipments, and recovery could be had only for what it was legally obligated to pay.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Action by the Denver & Rio Grande Western Railroad Company against W. A. Hover & Co., a copartnership. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Mason A. Lewis, of Denver, Colo. (James B. Grant and Robert L. Stearns, both of Denver, Colo., on the brief), for plaintiff in error.

Walter M. Campbell, of Denver, Colo. (E. N. Clark, of Denver, Colo., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and SCOTT and SANBORN, District Judges.

JOHN B. SANBORN, District Judge. On June 15, 1920, W. A. Hover & Co. delivered, at Denver, Colo., to the receiver of the Denver & Rio Grande Railroad Company, to whose causes of action the Denver & Rio Grande Western Railroad Company has succeeded, a box containing two five-gallon cans of carbon bisulphide, an inflammable liquid, for transportation over its line of road from Denver to Mancos. For convenience, in this opinion, the parties will be given the same designations as they had in the court below; the Denver & Rio Grande Western Railroad Company being the plaintiff, and W. A. Hover & Co. being the defendant. The box was properly labeled with a red label, calling attention to the nature of its contents, and containing the usual warning. On the bill of lading the shipper certified that the shipment was packed according to the regulations of the Interstate Commerce Commission. The box was loaded into C. & W. C. car No. 1543, together with a quantity of miscellaneous light and heavy freight of other shippers. There were bath tubs, iron pipe, a reel of wire rope, iron cylinders of oxygen gas, iron barrels of lubricating oil, reels of wire, agricultural implement wheels, electrical equipment, etc. The car was the next to the last car of a train of 32 freight cars which traveled from Denver, via La Veta and La Veta Pass, to Ft. Garland. The train was inspected on June 17, 1920, at La Veta, La Veta Pass, Sierra, Russell, and Ft. Garland, which are stations a few miles apart. There was apparently nothing wrong with the car prior to its arrival at Ft. Garland. From La Veta Pass to Ft. Garland the road goes down a mountain grade and there are a number of curves. The rate of speed of the train varied from 12 to 18 miles an hour. The brakes were on going down the grade, the cars swayed and rocked, but no more than usual. At Ft. Garland, it was discovered that a liquid was dripping on the hot brake shoe of the rear wheel of the front truck of the car in which the box of carbon bisulphide was located, and was igniting, with a bluish flame, with a strong odor of sulphur, as it came in contact with the hot shoe. The conductor and brakemen of the train were unable to put it out. It communicated itself to the bottom of the car. The car was cut out of the train, and was completely destroyed.

The plaintiff paid claims of other shippers to the extent of $3,897.02, and repaired the damage to the track caused by the fire, at an expense of $35. The plaintiff then brought this action to recover its damages from the defendant on the ground that the fire was the sole and direct result of the shipper's negligence in using second-hand gasoline cans of 30-gauge metal for the shipment of the carbon bisulphide, in violation of a regulation of the Interstate Commerce Commission requiring not less than 28-gauge metal containers. It also claimed that it was deceived in accepting the shipment, by virtue of the certificate that it complied with the regulation. The defendant denied that the fire was the result of any negligence on its part, or that it was negligent in any respect, alleged that the plaintiff itself was negligent, and asserted a claim for $28, the value of the carbon bisulphide. It also denied any deception.

On the trial, the plaintiff introduced the regulation of the Interstate Commerce Commission requiring metal containers of at least 28-gauge for the shipment of carbon bisulphide, introduced evidence tending to show that the cans in which the carbon bisulphide was shipped were second-hand gasoline cans made for the Continental Oil Company and probably of 30-gauge metal, and introduced evidence tending to show the proper loading and transportation of the car, the fire resulting from the leaking of the carbon bisulphide from the car upon the hot brake shoe, the destruction of the car and its contents by the fire, the payment of the claims of other shippers, the value of the material which was used to repair the track, and rested. Thereupon the defendant also rested. Each party made a request for a directed verdict, and reserved the right to submit further requests for instructions, if a directed verdict was refused.

The request of the defendant was denied. It submitted further requests, which were also denied, and the court directed a verdict in favor of the plaintiff for the full amount asked. The defendant took proper exceptions to

the denial of its request for a directed verdict, and the denial of its request for other instructions, and to the granting of the request of the plaintiff.

The first question to decide is whether the request by both parties for a peremptory instruction constituted a submission of the case to the court, regardless of the fact that the defendant asked, if that motion was denied, for the privilege of submitting other instructions, and did request further instructions. If that was the effect of the motions, we are limited, in reviewing the action of the court, to a consideration of the correctness of his finding on the law, and must affirm it if there is any substantial evidence to support it. On the other hand, if the defendant had not waived, in view of the reservation in its motion and subsequent request for further instructions, its right to go to the jury, we can inquire whether the instructions asked were rightly refused, whether the evidence was such as would have required the court to submit the case to the jury, or whether it was of such a conclusive character as to justify the court in instructing a verdict for the plaintiff. [1] In the United States courts, the rule is that, where each party to an action requests the court for a directed verdict in his favor at the close of the testimony, and does nothing more, the parties will be held to have waived the right to a trial by jury, and to have constituted the court a trier of questions both of law and fact. In stating the rule, the Supreme Court, in Williams v. Vreeland, 250 U. S. 295, 298, 39 S. Ct. 438, 439 (63 L. Ed. 989, 3 A. L. R. 1038), said: " 'Where both parties request a peremptory instruction and do nothing more they thereby assume the facts to be undisputed and, in effect, submit to the trial judge the determination of the inferences proper to be drawn therefrom.' And upon review, a finding of fact by the trial court under such circumstances must stand if the record discloses substantial evidence to support it. Anderson v. Messenger [C. C. A.] 158 F. 250, 253; Beuttell v. Magone, 157 U. S. 154, 157 [15 S. Ct. 566, 39 L. Ed. 654]; Empire State Cattle Co. v. Atchison, Topeka & Santa Fé Ry. Co., 210 U. S. 1, 8 [28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70]; Sena v. American Turquoise Co., 220 U. S. 497, 501 [31 S. Ct. 488, 55 L. Ed. 559]; American National Bank v. Miller, 229 U. S. 517, 520 [33 S. Ct. 883, 57 L. Ed. 1310]; Mead v. Chesbrough Bldg. Co. [C. C. A.] 151 F. 998, 1002; American National Bank v. Miller [C. C. A.] 185 F. 338, 341." See also note to Manska v. San Benito Land Co., 18 A. L. R. 1430, 1433.

No waiver of the right to have a case submitted to a jury is presumed from a request for a directed verdict on the part of both parties, where there is coupled therewith a request for other instructions, or for the submission of disputed questions of fact to the jury. Minahan v. Grand Trunk Western Railway Co. (C. C. A.) 138 F. 37; Sigua Iron Co. v. Greene (C. C. A.) 88 F. 207; Empire State Cattle Co. v. Atchison Ry. Co., 210 U. S. 1, 9, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70, which approved the concurring opinion of Judge Walter H. Sanborn in Empire State Cattle Co. v. Atchison, T. & S. F. Ry. Co. (C. C. A.) 147 F. 457, and the concurring opinion of Judge Shelby in McCormick v. National City Bank of Waco (C. C. A.) 142 F. 132, 6 Ann. Cas. 544; Minahan v. Grand Trunk Western Railway Co., supra; Manska v. San Benito Land Co., supra, page 1444.

[2] It is apparent, therefore, that the defendant did not waive its right to have the disputed questions of fact, if any, submitted to the jury, and that the court was in error in directing a verdict in favor of the plaintiff, unless "the testimony and all the inferences which the jury reasonably may draw therefrom would be insufficient to support a different finding." C., M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041.

There was no evidence which would support the conclusion that the plaintiff took this shipment by reason of any deception practiced upon it by the defendant. The theory upon which the case was tried and decided was that the failure of the shipper to comply with the regulation of the Interstate Commerce Commission relative to the use of 28-gauge metal containers, was negligence per se, that the fire and the resulting loss was the direct result of that negligence, and that therefore the defendant was liable.

There are many assignments of error, but there are only three main questions involved: (1) Was the defendant negligent as a matter of law? (2) Was the failure to use 28-gauge metal containers the proximate cause of the damage? (3) Did the plaintiff prove its damages?

[3] Where a statute imposes a duty upon a person for the protection or benefit of others, and he neglects to perform that duty, he is guilty of negligence, and is liable to those for whose protection or benefit it was imposed, for any injuries of the character which the statute is designed to prevent and which were proximately caused by such negligence. 20 R. C. L. pp. 38, 39; Cincinnati H. & D. R. Co. v. Van Horne (C. C. A.) 69 F. 139; Nar-

ramore v. Cleveland, C., C. & St. L. Ry. Co. (C. C. A.) 96 F. 298, 48 L. R. A. 68; Lake Erie & W. Ry. Co. v. Craig (C. C. A.) 73 F. 642; Schlemmer v. B. R., etc., Ry. Co., 205 U. S. 1, 15, 27 S. Ct. 407, 51 L. Ed. 681. "A regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision. United States v. Grimaud, 220 U. S. 506 [31 S. Ct. 480, 55 L. Ed. 563]; United States v. Birdsall, 233 U. S. 223, 231 [34 S. Ct. 512, 58 L. Ed. 930]; United States v. Smull, 236 U. S. 405, 409, 411 [35 S. Ct. 349, 59 L. Ed. 641]; United States v. Morehead, 243 U. S. 607 [37 S. Ct. 458, 61 L. Ed. 926]." Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 157 (64 L. Ed. 297).

[4] The Interstate Commerce Commission is not a legislative body. It has the power to execute and enforce. "The power given is partly judicial, partly executive and administrative, but not legislative." Interstate Commerce Commission v. Cincinnati, etc., Ry. Co., 167 U. S. 479, 501, 17 S. Ct. 896, 901 (42 L. Ed. 243). In Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 438, 27 S. Ct. 350, 354 (51 L. Ed. 553, 9 Ann. Cas. 1075) the court said: "The Commission was endowed with plenary administrative power to supervise the conduct of carriers, to investigate their affairs, their accounts and their methods of dealing, and generally to enforce the provisions of the act." See, also, I. C. C. v. Railway Co., 167 U. S. 479, 506, 17 S. Ct. 896, 42 L. Ed. 243.

The Commission cannot make or modify the law. Executive and administrative departments of the government are required to keep within the limits of the power granted them by Congress. Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267; United States v. United Verde Copper Co., 196 U. S. 207, 215, 25 S. Ct. 222, 49 L. Ed. 449; Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278; United States v. George, 228 U. S. 14, 33 S. Ct. 412, 57 L. Ed. 712; Waite v. Macy, 246 U. S. 606, 38 S. Ct. 395, 62 L. Ed. 892; St. Louis Merchants' Bridge Co. v. United States (C. C. A.) 188 F. 191; United States v. Eleven Thousand One Hundred Fifty Pounds of Butter (C. C. A.) 195 F. 657; Hurwitz v. United States (C. C. A.) 280 F. 109; American Sugar Refining Co. v. Delaware, etc., R. R. Co. (C. C. A.) 207 F. 733.

We must determine whether the particular regulation in question here was one which the Interstate Commerce Commission had power to prescribe, in order to ascertain whether it imposed any duty upon the defendant relative to the shipment of carbon bisulphide. The regulation of the Interstate Commerce Commission relating to the transportation of dangerous articles, other than explosives, by freight, upon which the plaintiff relies, recites that it is prescribed under the Act of March 4, 1909 (Comp. St. §§ 10402–10415), and section 15 of the Act to Regulate Commerce, as amended June 18, 1910, § 12 (36 Stat. 551). Subsection (1) of section 2 is as follows:

"Carbon bisulphide in interior packages of capacity greater than one-half gallon must be shipped in metal cans of not less than 28 gauge, boxed, complying with specification No. 2; or in metal barrels or drums complying with specification No. 5, such barrels or drums not to exceed 55 gallons capacity. Carbon bisulphide may also be shipped in tank cars complying with paragraph 1824 (j)."

Under the heading "Shipping Container Specification No. 2, for Inflammable or Corrosive Liquids and Boxes for Outside Containers of Same," the following regulation is made:

"Cans exceeding 1 gallon and not exceeding 10 gallons capacity must be made of metal not lighter than 30-gauge, United States standard (28-gauge for cans containing carbon bisulphide.) Cans not exceeding 1 gallon capacity may be made of metal lighter than 30-gauge, United States standard, but it must be such as will provide proper protection against leakage in transit."

The Act of March 4, 1909 (35 Stat. 1135; sections 233 and 235, Criminal Code [Comp. St. §§ 10403, 10405]), pursuant to which these regulations were prescribed, so far as pertinent, is as follows:

"Sec. 233. The Interstate Commerce Commission shall formulate regulations for the safe transportation of explosives, which shall be binding upon all common carriers engaged in interstate or foreign commerce which transport explosives by land. * * * Such regulations shall be in accord with the best known practicable means for securing safety in transit, covering the packing, marking, loading, handling while in transit, and the precautions necessary to determine whether the material when offered is in proper condition to transport. * * *

"Sec. 235. Every package containing explosives or other dangerous articles when presented to a common carrier for shipment shall

have plainly marked on the outside thereof the contents thereof; and it shall be unlawful for any person to deliver, or cause to be delivered, to any common carrier engaged in interstate or foreign commerce by land or water, for interstate or foreign transportation, or to carry upon any vessel or vehicle engaged in interstate or foreign transportation, any explosive, or other dangerous article, under any false or deceptive marking, description, invoice, shipping order, or other declaration, or without informing the agent of such carrier of the true character thereof, at or before the time such delivery or carriage is made. * * * "

Carbon bisulphide is an inflammable liquid, and not an explosive, and has been so classified by the Interstate Commerce Commission itself.

By the Act of March 4, 1921 (41 Stat. 1444), which was enacted subsequent to the date of this shipment, Congress amended the Act of March 4, 1909, and authorized the Interstate Commerce Commission to formulate regulations for the safe transportation not only of explosives, but of other dangerous articles, including inflammable liquids. Section 233, as amended, is as follows:

"The Interstate Commerce Commission shall formulate regulations for the safe transportation within the limits of the jurisdiction of the United States of explosives and other dangerous articles, including inflammable liquids, * * * which shall be binding upon all common carriers engaged in interstate or foreign commerce which transport explosives or other dangerous articles by land or water, and upon all shippers making shipments of explosives or other dangerous articles via any common carrier engaged in interstate or foreign commerce by land or water." Comp. St. § 10403.

The plaintiff's claim is that the amendment did not add anything to the powers which the Interstate Commerce Commission already had, but was to avoid any possible question as to the right of the Commission to prescribe regulations for the shipment of inflammables. Its further contention is that, without either the Act of March 4, 1909, or the Act of March 4, 1921, the Interstate Commerce Commission had authority to prescribe such regulations. This by virtue of section 15 of the Act to Regulate Commerce, as amended June 18, 1910 (36 Stat. 539, 551). Under that section, the Commission is given the power, after a full hearing, to remove unjust or unreasonable, or unjustly discriminatory or unduly preferential or prejudicial rates, fares, charges or practices of carriers, and to prescribe just, reasonable and fair rates, charges or practices.

There is nothing in section 15 which refers to the practices of shippers either in packing their goods or otherwise, or which confers any authority upon the Commission to impose upon shippers the duty of packing explosives or inflammable liquids in any particular way for shipment, nor are such regulations reasonably adapted to the enforcement of the act, which clearly refers to the acts of carriers, and not of shippers. It is possible that the Commission might have prescribed regulations obligatory upon the carriers relative to the acceptance and transportation of dangerous articles unless properly packed, if that had any bearing upon the question of rates, charges or practices of the carriers.

It will be noted that, by the Act of March 4, 1909, the regulations of the Interstate Commerce Commission to be prescribed pursuant thereto "shall be binding upon all common carriers engaged in interstate or foreign commerce which transport explosives by land." It will also be noted that the Act of March 4, 1921, provides that the regulations "shall be binding upon all common carriers engaged in interstate or foreign commerce which transport explosives or other dangerous articles by land or water, *and upon all shippers making shipments of explosives or other dangerous articles via any common carrier engaged in interstate or foreign commerce by land or water.*

[5] We reach the conclusion that the regulation relied upon by the plaintiff as the basis for its claim of negligence on the part of the defendant, because unauthorized, imposed no duty upon shippers, and that its violation by a shipper could not, therefore, constitute negligence as a matter of law or evidence of negligence. It is therefore unnecessary to determine whether there was evidence to justify the conclusion that the regulation had been violated.

[6] But, even if the defendant was obligated to comply with this regulation and had failed to do so, there could still be no recovery by the plaintiff in this case, because there was not sufficient evidence to prove that it was the failure to fulfill the obligation which caused the cans to leak and the consequent destruction of the car. If there had been any evidence to show a causal connection between the use of the second-hand gasoline cans of 30-gauge metal and the happening of the fire, the question of proximate cause would have been a question for the jury; but, under the evidence here, the whole matter was left in the realm of speculation and conjecture. The

leaking of the cans may have been caused by many other things than the gauge of the metal. It may have been a result of defective solder, rust, failure to properly secure the openings of the cans, failure on the part of the plaintiff to properly brace whatever heavy articles surrounded the cans; loosening and shifting of the load in the car while it was coming down the mountain grade from La Veta Pass, or the falling of some other article of freight upon the cans. The fact that the car was in good condition when it left La Veta Pass, Sierra, and Russell would seem to make it more probable that the leakage was caused by some dislocation of the contents of the car than anything else. It might have been an unavoidable accident.

While the failure to fulfill an obligation to use care, imposed by law, is negligence, there must be shown a causal connection between the unlawful act and the injury, or the action fails. If the injury would have occurred regardless of the violation of the law, the defendant is not liable because of the violation. 20 R. C. L. p. 43. It is impossible to determine from the evidence in this case whether the violation of the regulation had anything whatever to do with the happening of this fire. A jury would have no right to speculate about it.

In the case of C., M. & St. P. Ry. Co. v. Coogan, supra, Mr. Justice Butler says: "The record leaves the matter in the realm of speculation and conjecture. That is not enough. Pawling v. United States, 4 Cranch, 219, 221, 2 L. Ed. 601; Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 663, 21 S. Ct. 275, 45 L. Ed. 361; Looney v. Metropolitan Railroad Co., 200 U. S. 480, 488, 26 S. Ct. 303, 50 L. Ed. 564; St. L. & Iron Mtn. Ry. Co. v. McWhirter, 229 U. S. 265, 282, 33 S. Ct. 858, 57 L. Ed. 1179; St. Louis-San Francisco Ry. v. Mills, 271 U. S. 344, 46 S. Ct. 520, 70 L. Ed. 979, decided May 24, 1926." See, also, Armour & Co. v. Harcrow (C. C. A.) 217 F. 224, 228; Davis v. Schroeder (C. C. A.) 291 F. 47, 52; Copeland v. C., B. & Q. R. Co. (C. C. A.) 293 F. 12, 16; Illinois Cent. R. Co. v. Coughlin (C. C. A.) 132 F. 801, 813.

There is nothing in the record to show that containers of 30-gauge metal always or ever leaked when carbon bisulphide was shipped in them, and the mere happening of the accident had no tendency to prove that the failure to use 28-gauge metal containers was the proximate cause of the fire.

[7] While it is unimportant, in the view which we take of this case, attention may as well be called to the fact that the only damage of which there was competent evidence

amounted to $35, the reasonable value of the material required to repair the injury to the tracks and ties done by the burning of the car. The amount paid by the claim department of the plaintiff to shippers who filed claims for goods claimed to have been destroyed, was not the true measure of damage. The plaintiff was liable to the shippers for the fair market value of their shipments. Eddy v. Lafayette (C. C. A.) 49 F. 807; Chicago & E. R. Co. v. Ohio City Lumber Co. (C. C. A.) 214 F. 751; C., B. & Q. R. Co. v. Gelvin (C. C. A.) 238 F. 14, L. R. A. 1917C, 983; Crail v. Illinois Cent. R. Co. (C. C. A.) 13 F.(2d) 459.

Here the defendant, if its fault had caused the destruction of the car, was liable not for what the carrier paid the other shippers, but for what it paid that it was legally obligated to pay. There was no evidence in the case that the amount paid by the carrier's claim agent represented the value of the goods destroyed. See Peyser v. Lund, 89 App. Div. 195, 85 N. Y. S. 881. The trial court, at the close of the testimony should have denied the request of the plaintiff for a directed verdict, and granted the request of the defendant.

The judgment must be reversed, the case remanded, and the court below directed to grant a new trial.

It is so ordered.

SCOTT, District Judge, concurs in the result.