MISSOURI PACIFIC RAILROAD COM-
PANY, Appellant,

v.

The H. ROUW COMPANY, Appellee.

No. 17059.

United States Court of Appeals
Fifth Circuit.

Aug. 27, 1958.

As Modified on Rehearing Sept. 24, 1958.
Second Petition for Rehearing Denied
Oct. 27, 1958.

Harry L. Hall, Strickland, Wilkins, Hall & Mills, Mission, Tex., for appellant.

James E. Little, Edinburg, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents the question of the correct measure of damages which should be allowed the owner (or the party entitled to recover) of an interstate shipment of perishables damaged by the negligence of a common carrier by rail. Based upon two Texas cases [1] the court below held that "the measure of damages * * * [was] the difference between the wholesale market price of the commodities had they arrived in the condition they should have been had they been properly and promptly transported and the same market value in the condition in which they were delivered."[2]

---

1. Thompson v. H. Rouw Company, Tex. Civ.App.1951, 237 S.W.2d 662, writ of error refused by the Supreme Court with notations of no reversible error; and Texas and New Orleans Railroad Co. v. H. Rouw Company, Tex.Civ.App.1954, 271 S.W.2d 666, writ of error dismissed by the Supreme Court of Texas.

2. Appellee had filed suit against the initial carrier for damages to fifteen cars of
tomatoes and two cars of cantaloupes shipped by it under uniform bills of lading from Edinburg, Texas. Five carloads of the tomatoes were diverted to New York City, ten carloads were shipped to Boston, one carload of cantaloupes was shipped to New York City, and one carload to Philadelphia, Pennsylvania. The tomatoes and melons were classified under United States standards,

▮ The rule stated by the court below is undoubtedly the rule of general application, and both sides admit that this is true. But appellant claims that, under the facts of this case, the court should have deducted from the gross amount of this difference in market value, the necessary expenses shown by the evidence to have been included in the award made by the court attributable to such difference. Appellee contends, on the other hand, that the court correctly allowed it the gross difference between the actual market value of the shipments as received and the market value which would have been realized if they had not been damaged in transit. We agree with the position of appellant.

The shipments involved here being interstate, the liability of the carrier and the measure of damages are determined by the Interstate Commerce Act[3] and the decisions of the Courts of the United States construing it. Georgia, Florida, & Alabama Ry. Co. v. Blish Milling Co., 1916, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948; St. Louis, I. Mt. & So. Ry. Co. v. Starbird, etc., 1916, 243 U.S. 592, 37 S.Ct. 462, 61 L.Ed. 917; and Southern Pacific Co. v. Stewart, 1917, 245 U.S. 359, 38 S.Ct. 130, 62 L.Ed. 345. There can be no doubt that the damages allowed by the court below faithfully reflect the rule as worked out in the two Texas cases, which discuss ably and at great length various decisions of the United States Courts of Appeal and of the Supreme Court. The two Texas Courts concluded that the rule followed by the court below was one of universal and invariable application even though they conceded that it was merely a rule of convenience.

We are unable to agree with the conclusions reached in these two cases upon which the court below relied. Here, as there, the problem is simplified by the fact that the property constituting the damaged shipments had, in every instance, a market value at destination. The two Texas decisions took freight charges into consideration in arriving at the difference in market values, but declined, as did the court below, to take into account other items of necessary expense which, in our opinion, ought to be deducted in arriving at the true actual loss and damage. The rule of convenience quoted from the opinion of the court below would result, if applied thus categorically to the shipments here involved, in recovery by the appellee of more than its actual loss. Such a recovery would violate principles of law as universal in their application as that which the court below used as the basic and inflexible rule governing recovery in this case. These principles are well set forth in 15 American Jurisprudence, Damages, § 13, p. 402:

"The fundamental principle of the law of damages being compensation for the injury sustained, the plaintiff in a civil action for damages cannot * * * hold a defendant liable in damages for more than the actual loss which was inflicted by

and all were in good condition when receipted for by the carrier and were in damaged condition upon arrival at destination.

The court below, sitting without a jury, found that the shipments were damaged by the negligence of the rail carriers, and no appeal was taken from that portion of the findings and the judgment based thereon. It fixed the amount of the damages by the application of the rule above quoted, and appellant raises on its appeal only the question of whether the trial court applied the correct measure of damages.

It was stated without challenge in the oral argument that, in some years, approximately a quarter of a million cars of vegetables and fruits are shipped out of the Rio Grande valley—in which Edinburg is situated—to distant points in interstate commerce. It is apparent from both briefs that this is a test case to determine the true measure of damages in such cases.

3. 49 U.S.C.A. § 20, Par. (11): "Any common carrier * * * subject to the provisions of this chapter * * * shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon * * * for the full actual loss, damage, or injury to such property caused by it * * *".

his wrong. \* \* \* The law will not put him in a better position than he would be in had the wrong not been done or the contract not been broken."

The evidence before the court below fairly established that shippers, including appellee, universally paid brokers a commission to dispose of such shipments at destination. That commission represented a charge each shipper was bound to pay upon the full amount received, so that a carload of tomatoes would yield to the owner the amount for which it was sold, less the commission incurred in making the sale. By allowing appellee the gross amount of the difference between the market value of the shipments in damaged condition and the value which would have been applied if the shipments had not been damaged, the court did not deduct from this difference the amount of commissions which would have been incurred in selling them.[4]

The action of the court below in awarding appellee damages in the full gross amount of the difference between the two market values necessarily resulted, therefore, in the enrichment of appellee to the extent of the nondeducted commission, and permitted it a recovery of more damages than it actually suffered. This is, in our opinion, in derogation of the general rule above quoted from American Jurisprudence.

The rule adopted by the court below can be applied as herein set forth so as to make the shipper whole and not require the carrier to pay more than indemnity. What the Supreme Court said in Chicago, Milwaukee & St. Paul R. Co. v. McCaull-Dinsmore Co., 1920, 253 U.S. 97, 100, 40 S.Ct. 504, 64 L.Ed. 801, indicates that the rule should be applied in such a way as to achieve fairness and justice:

"But the question is how the contract operates upon this case. \* \* The rule of the common law is not an arbitrary fiat but an embodiment of the plain fact that the actual loss caused by breach of a contract is the loss of what the contractee would have had if the contract had been performed, less the proper deductions, which have been made and are not in question here."

The Supreme Court, in Illinois Central R. Co. v. Crail, 1930, 281 U.S. 57, 50 S.Ct. 180, 74 L.Ed. 699,[5] demonstrated clearly that the market value rule should be applied in such a way as to dove-tail with the rule permitting recovery of compensatory damages only. A carload of coal shipped to Crail was 5,500 pounds short, and both the District Court and the Circuit Court of Appeals awarded him recovery of $9.70 per ton, which was the amount he would have to pay to replace the coal at retail. The coal actually received was placed in Crail's large stock of coal held for resale, and he did not actually go into the market to purchase coal to replace that which had been lost in transit. The Supreme Court refused to approve the hard and

---

4. For illustration, Count IV covered car No. 31827, whose market value in the condition it actually arrived was $2,049.-50. The proof showed that the car was not in good condition, and if it had been in good condition the market value would have been $2,249.50. The court allowed the appellee damages in the sum of $200.-00, representing the difference between the two market values. But to make any sale of these shipments, appellee would have been compelled to pay a commission, generally about eight percent. The allowance of the entire $200.00 difference did not conform, therefore, to the actual facts, because it included $16.00 (i. e., 8% of $200.00) commission which

appellee would have been compelled to pay. The allowance as to each of the other cars was excessive to the same extent, and the court also failed to allow certain items of cartage which were proven as necessary expenses on some of the shipments.

5. A full grasp of the import of the holding can be gained only by reading the decisions of the District Court and the Circuit Court of Appeals in their handling of the case before it reached the Supreme Court. See Crail v. Illinois Central R. Co., 8 Cir., 1926, 13 F.2d 459, same case, D.C.Minn.1927, 21 F.2d 836, and Illinois Central R. Co. v. Crail, 8 Cir., 1929, 31 F.2d 111.

fast application of the "market value" rule because it would permit Crail to recover more than his actual loss. Its language (281 U.S. at pages 63–64, 50 S.Ct. at page 181) points the way to the correct decision here:

"It is not denied that a recovery measured by the wholesale market price of the coal would fully compensate the respondent, or that the retail price, taken as the measure of the recovery allowed below, includes costs of delivery to retail consumers which respondent did not incur, and a retail profit which he had not earned by any contract of resale. But respondent contends, as was held below, that the established measure of damage for nondelivery of a shipment of merchandise is the sum required to replace the exact amount of the shortage * * *.

"This contention ignores the basic principle underlying common-law remedies that they shall afford only compensation for the injury suffered, [citing authorities] and leaves out of account the language of the amendment, which likewise gives only a right of recovery for 'actual loss.' The rule urged by respondents was applied below in literal accordance with its conventional statement. As so stated, when applied to cases as they usually arise, it is a convenient and accurate method of arriving at an amount of recovery which is compensatory. * *

"There is no greater inconvenience in the application of the one standard of value than the other, and we perceive no advantage to be gained from an adherence to a rigid uniformity, which would justify sacrificing the reason of the rule, to its letter. The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to, if, for special reasons, it is not exact or otherwise not applicable. * * * " [6]

We think that the rigid application of the market value rule here resulted in awarding appellee more than its actual loss; and there is ground to believe that the court below had the same feeling.[7]

We are not, however, undertaking to weigh or appraise the evidence as to damages. We hold simply that the judgment appealed from clearly includes the award of some damages to which appellee was not entitled, growing out of the holding of the court below that no deduction should be made of sales commissions and other charges figured on the amount of the difference in market values between delivery in good order and delivery in bad order. Appellee's recovery should be based upon this dif-

---

6. We quoted with approval a portion of this language in our case of Waterman S.S. Corp. v. United States Smelting, Refining & Mining Co., 1946, 155 F.2d 687, 694. And cf. also Reider v. Thompson, 5 Cir., 1952, 197 F.2d 158.

7. After making detailed findings that the shipments had been damaged the court below stated this: " * * * defendant insists that certain commissions which plaintiff would have had to pay should be deducted from any recovery. The court permitted proof to be made as to what these commissions would have been but denies a recovery therefor under Thompson v. H. Rouw Co., (Tex.Civ.App.) 237 S.W.2d 662, Texas and New Orleans Railroad Co. v. H. Rouw Co., (Tex.Civ. App.) 271 S.W.2d 666, and cases therein cited and discussed. * * * The court will enter findings if desired as to the total amount of commission which the plaintiff would have had to pay for which defendant claims the right to a deduction, which deduction is denied by the court."
Some weeks later the court below made a memorandum "containing additional findings of fact." In these findings the court referred to the items of commission on the difference in market value which formed the basis of this action. This supplemental memorandum was entered in response to motions of the parties for additional findings, appellant's motion being based upon the identical position presented in its appeal. The Court below concluded its supplemental findings with the statement: "In all other respects the motions of the parties for additional findings are overruled since they are for details and evidentiary, not ultimate facts."

ference in market values, but not to exceed indemnity.

The judgment is reversed and the cause is remanded for the adjustment of the award of damages according to the evidence and in consonance with this opinion.

Reversed and remanded.

HUTCHESON, Chief Judge (dissenting).

Of the clear view that the two Texas cases relied on by the District Judge and cited in the opinion of the majority were correctly decided and that the majority opinion tithes mint, anise and cumin while rejecting weightier matters of the law, I align myself with the Texas courts and respectfully dissent from the opinion and decision of the majority.

Second petition for rehearing denied; HUTCHESON, Chief Judge, dissenting.